JACOB EPSTEIN, NATHAN EPSTEIN, ABRAHAM I. WEINBERG, A. RAY KATZ AND SIDNEY LANSBURGH, CO-PARTNERS, TRADING AS THE BALTIMORE BARGAIN HOUSE,

*vs.*

CHARLES H. RUPPERT.

*Negligence: automobiles; jumping right in front of—.*

In a suit for damages for injuries caused by an automobile, the agency of the chauffeur and the defendant's ownership of the automobile are questions of facts to be submitted to the jury upon proper instructions from the Court.                    p. 440

Where a person riding in a vehicle suddenly alights or jumps from it right in the way of an approaching automobile or other vehicle without giving time to the person operating the other vehicle to stop it, the defendant is not liable and the jury should be so instructed.                    p. 441

*Decided December 13th, 1916.*

Appeal from the Baltimore City Court. (DUFFY, J.).

The facts are stated in the opinion of the Court.

The following are the granted prayers of the respective parties that the Court directed should be included in the report of the case:

*Plaintiff's 1st Prayer.*—If the jury find that on or about the 5th day of April, 1915, the plaintiff was injured and that said injury was caused by a truck belonging to the defendants while traveling upon Baltimore street at or about its intersection with Eutaw street, public thoroughfares of the city of Baltimore, if the jury so find, and that said injury resulted directly from the want of ordinary care and prudence of the driver or servant of the defendants in handling and managing said truck and not from the want of ordinary care and prudence on the part of the plaintiff directly contributing to the injury, then the plaintiff is entitled to recover. (*Granted.*)

*Plaintiff's 2nd Prayer.*—If the jury shall find a verdict for the plaintiff, then in estimating the damages they are to consider his health and condition before the injury complained of as compared with his present condition in consequence of said injury, and also the physical and mental suffering, if any, to which he was subjected by reason of said injury and to allow him such damages as in the opinion of the jury will be a fair and just compensation for the injury which he has sustained. (*Granted.*)

*Defendant's 6th Prayer.*—The Court instructs the jury that the mere happening of the accident complained of raises no presumption of negligence on the part of the chauffeur of the defendants operating the automobile referred to in the evidence, but the burden is upon the plaintiff to establish by a fair preponderance of affirmative evidence that negligence on the part of said chauffeur caused said accident, and if the minds of the jury were left by the evidence in a state of even balance as to the existence of such negligence, then the verdict of the jury must be for the defendants. (*Granted.*)

*Defendants' 8th Prayer.*—The Court instructs the jury that if they find from the evidence that the plaintiff stepped or jumped in the way of the automobile of the defendants when it could not be arrested in its course, and under circumstances where with ordinary care on the part of the chauffeur in charge of said automobile, the automobile could not be brought to a pause early enough to save the plaintiff from injury, the defendants are not liable, and the verdict of the jury must be for the defendants.   (*Granted.*)

*Defendants' 9th Prayer.*—The Court instructs the jury that if they find from the evidence that the injuries complained of resulted from an unavoidable accident unmixed with negligence on the part of the servant or chauffeur of the defendants, in charge of the automobile referred to in the evidence, then the verdict of the jury must be for the defendants, and by negligence is meant failure to exercise such reasonable care as a reasonably prudent person would have exercised under like circumstances.   (*Granted.*)

*Defendants' 10th Prayer.*—The Court instructs the jury that if they find that the automobile mentioned in the evidence was being driven east on Baltimore street in charge of the servant or chauffeur of the defendants, and was being driven at a reasonable rate of speed and on the right of the middle of said street; and shall further find that a wagon on which plaintiff was riding was being driven west on said street on or near the westbound street car tracks in said street, and to the left of the center of said street; and shall further find that when the wagon and automobile were abreast of one another, the plaintiff suddenly stepped or jumped off said wagon and in doing so stepped or jumped in the way of said automobile when it could not be arrested in its course, and under circumstances where with ordinary care on the part of the chauffeur the automobile could not be brought to a stop in time to save the plaintiff from injury, the defendants are not liable and the verdict of the jury must be for the defendants.   (*Granted.*)

*Defendants' 14th Prayer.*—The jury are instructed that if the minds of the jury are left by the evidence in a state of even balance, as to whether it was an automobile in charge of defendants' chauffeur that was the cause of the accident, then their verdict must be for the defendants. (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Aubrey Pearre, Jr.,* (with whom were *Barton, Wilmer and Stewart* on the brief), for the appellants.

*William Colton,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is a suit by the plaintiff against the defendant company, trading as the Baltimore Bargain House, to recover damages for personal injuries received by him on the 5th day of April, 1915, by reason of the alleged negligence of the defendants, in driving an automobile along Baltimore street, one of the thoroughfares of Baltimore City.

The Record in the case contains four bills of exceptions. The first, second and third present questions upon the admission of evidence, and the fourth relates to the rulings of the Court upon the prayers, and to the overruling of the defendants' special exception to the plaintiff's first prayer.

From a judgment in favor of the plaintiff for the sum of $500, the defendants have appealed.

The declaration in the case alleges that while the plaintiff was in the act of prudently and carefully crossing Baltimore street, at or about the intersection with Eutaw street, they being public thoroughfares of Baltimore City, the defendants negligently and carelessly drove, managed and conducted, and caused and procured negligently and carelessly to be

driven, managed and conducted an automobile along and upon said Baltimore street, so that on the day and year mentioned and directly because of the premises, the plaintiff was knocked down and then and there seriously and permanently injured about the head, body and limbs, caused to suffer great physical pain and mental anxiety, disqualified in part from pursuing his ordinary avocation, whereby he has lost the emoluments he otherwise would have received from his said calling, has been obliged to employ medical aid and purchase medicines and appliances at great cost and expense and is otherwise injured and damaged. And that his injuries were directly caused by the negligence and want of care of the defendants, their agents and servants in the premises, and without negligence or want of care on the part of the plaintiff directly thereunto contributing.

The facts relied upon by the appellee to sustain the action are these:

The plaintiff testified, that he was a stage carpenter and was about 29 years old. On April 5, 1915, he stated, that "I was coming west on Baltimore street on a laundry wagon. I had got on the wagon with the man; he was going my way, the way I was going. I had a date at the Palace Theatre at eleven o'clock. And, coming west on Baltimore street, we crossed Eutaw, which was about twenty minutes of eleven, as near as I can judge, and we stopped on the far side of the street and I looked ahead before I got off and there wasn't anything in the block at all, no vehicles at all, but one truck. I seen the big truck was nearer Paca street than it was to Eutaw, and in stepping off the wagon, rather, I just stepped on the ground when the truck hit me—what I knowed was a truck—because naturally my back was to it and I didn't think that the automobile could—would—get to me before I got off the wagon and the wagon that I was on had started off again, just had started when this truck hit me. Naturally it spun me around and I fell down and when

I looked around for the truck it was down between Eutaw and Howard streets about midway of the block."

He further testified that the wagon in which he was travelling was going west on Baltimore street and the defendants truck or automobile was travelling east, and that he was struck on the left foot, above the heel by the front wheel of the automobile at the northwest corner of Baltimore and Eutaw streets, as he stepped down from the wagon to the street, and as soon as he alighted on the ground, that he had an unobstructed view of Baltimore street, and before leaving the wagon he looked ahead and saw the automobile, it was the only vehicle in the block, except the wagon between Eutaw and Paca streets, the block being the length of the ordinary city block, and that after locating the automobile, "used my left foot on the shaft, then down with the right foot and threw my left foot on the ground and that is how he struck me."

He testified upon cross-examination as follows: Q. How far away was this automobile when you saw it? A. Well it was closer to Paca street than it was to Eutaw. Q. Well, you were about fifteen feet, you say, from the corner of Eutaw street? A. About ten or fifteen feet, yes. Q. What is the distance of that block, do you know, between Paca and Eutaw streets? A. I judge it to be about 150 feet. Q. About 150 feet? A. Yes, sir. Q. How much closer to Paca street was this truck than it was to Eutaw street when you first saw it? A. Well, I judge about one-third of the block. Q. In other words—(Witness, interrupting): About one-third up from Paca street, this way. Q. Then at any rate the truck was not much over a hundred feet from you? A. That is, if the block is only 150 feet? Q. But I am asking you how far? A. I am just giving you a rough idea. Q. I want to know, to the best of your idea, how far this truck was from you—some idea of how far you would say the truck was from you? A. Figuring the block was 150 feet, I would judge the truck was about 100 or 110 feet away from me.

John H. Kahl, the chauffeur testified that he had been in the employ of the defendants, for three years, and held that position in April, 1915, and remembered making a trip on the day of the accident. As he neared Eutaw street he noticed a wagon coming across the street. "The young man was about to get up; I didn't pay no attention, I kept on going." The young man was sitting on the left-hand side of the wagon, and started to get up, at which time he was about twenty feet from Eutaw street, and right near the German Bank at the corner of Baltimore and Eutaw streets. He did not see the young man get down off the wagon, and did not see his automobile strike the man. He stated that the steering wheel of his automobile is on the left-hand side, which was the side of the automobile nearest the wagon, and the front wheels of the automobile "are right under the seat, I sit right over the front wheels." The hub extends beyond the name "Baltimore Bargain House" in the front, that is, the windshield, but the front wheels are right under the seat. Q. Now, then, if you had hit any one with the front wheels of that truck, could you have seen him? A. Yes, I could have.

He further testified, he was going about five or six miles an hour, with the current shut off, drifting down a little grade; that he was drifting because it was a hill, and he never comes down a hill fast; the truck was a 3½ ton truck, and is a top car. Baltimore and Eutaw streets is a traffic corner, but at the time of the accident there was no officer there. Witness was on the lookout for an officer and when about twenty feet from the crossing saw this man get up.

He also testified that he did not see the man get down from the wagon, and the only reason he thought, he was going to get off, was that he got up from the seat, that he never saw the wagon until he was right along side of it. Q. How is it you did not see it before? A. I wasn't looking. I was just looking in front. I wasn't looking on the other side of the car track. I was looking straight. Q. You never saw this wagon until you were right alongside of it? A. Yes,

sir.  Q. And then you saw the young man getting up?  A.
Yes, sir.  Q. How is it you came to notice his getting up,
if you did not see the wagon until then?  A. Well, he was
quite a tall young man, and all I could see was somebody
getting up and that was all.  I went right on down Baltimore
street.  Q. When you saw him getting up what impressed
that on your mind, seeing a man get up in a moving vehicle?
A. I judged the man was going to get off or something.  Q.
Then why didn't you stop your vehicle right there?  He was
going to get off the side next to your wagon, wasn't he?  A.
I suppose he was.  Q. Now, why didn't you stop your vehi-
cle?  A. Well, sir; I didn't think the young man was going
to jump.  (Mr. Colton, interrupting): If you thought he
was going to get off, why didn't you stop?  A. I didn't think
the young man was going to jump.  Q. Well, did he jump?
A. I don't know, sir.  Q. Then you do not know whether
he jumped or not?  A. No, sir.

William Day, the driver of the wagon, upon which the
plaintiff was riding, just prior to the accident, testified in
substance, that on the day of the accident, while driving west
on Baltimore street in the car track, he saw an automobile
coming towards the wagon about the time the plaintiff started
to get off at Baltimore and Eutaw streets, that the auto-
mobile was about fifty feet from the wagon, when he stepped
down from it.  He also testified that this automobile was the
only one, in the block at the time, and that he heard someone
holler almost as soon as the plaintiff got off.

Police Officer Smith, who investigated the cause of the
accident for the purpose of making the usual police report,
testified, that he ascertained from the employees at the Bal-
timore Bargain House, that the name of the chauffer who
operated the truck was John H. Kahl, license No. 1014, and
in describing the truck, said, "it was a great big truck, the
Baltimore Bargain House name on it, used to convey freight
to and from, operated by electricity, mechanically not by
horses."

This outline and review of the controlling facts of the case, will be found sufficient to enable us, to pass upon the legal questions presented and raised by the rulings, of the Court, upon the prayers.

The plaintiff's first and second prayers are in the usual form and have been frequently approved by this Court, in negligence cases. They were properly granted by the Court.

The defendants submitted fourteen prayers. The Court granted the defendants' sixth, eighth, ninth, tenth and fourteenth prayers, and refused the rest.

The defendants' first, second, third and twelfth prayers were demurrers to the evidence and sought to withdraw the case from the consideration of the jury, upon the ground, first, that the plaintiff had offered no evidence legally sufficient to entitle him to recover; second, that the plaintiff directly contributed to the happening of the accident, by his own want of ordinary care and prudence, and third, there was no evidence legally sufficient, to prove that the automobile that caused the injury, was an automobile in charge of the defendants' chauffer. These prayers were properly refused, because under the evidence to which we have referred, the question of defendants' negligence and of the plaintiff's contributory negligence were questions for the jury, and the Court could not have properly withdrawn them from their consideration.

The plaintiff had offered evidence tending to show that the driver who operated the automobile was in the employ of the defendants and that they were the owners of the automobile. The name Baltimore Bargain House was on the machine, and it was used by it in conveying freight to and from its warehouse. The agency of the chauffeur, and the ownership of the automobile, were denied by the defendants, and these were questions on the facts in the case for the jury to find, under proper instructions from the Court: *Vonderhorst Brewing Co.* v. *Amrhine,* 98 Md. 411; *Geiselman* v. *Schmidt,* 106 Md. 586.

The law of the case was fully submitted by the plaintiff's and defendants' granted prayers. The reporter will set out these prayers.

The defendants' rejected prayers were fully covered by their granted prayers and the defendants were not injured by their rejection.

The questions of negligence and contributory negligence were fully and fairly submitted to the jury for their finding under the granted instructions and it was their province to find whose negligence caused the injury.

By the defendants' tenth prayer the jury were told that if they shall further find that when the wagon and automobile were abreast of one another, the plaintiff suddenly stepped or jumped off said wagon and in doing so stepped or jumped in the way of said automobile when it could not be arrested in its course, and under circumstances where with ordinary care on the part of the chauffeur the automobile could not be brought to a stop in time to save the plaintiff from injury, the defendants are not liable and the verdict of the jury must be for the defendants.

We find no reversible error, in the rulings of the Court upon the admission of evidence.

The evidence sought to be introduced and objected to, in the first exception was simply introductory and could not have injured the plaintiff's case.

The objection to the question asked Officer Smith, who is Mr. Kahl? and the answer: "He is the operator of the automobile supposed to have injured this man," was properly overruled and the answer allowed to stand. The portion of the answer relating to what Mr. Kahl said was stricken out by the Court.

The refusal of the Court, to grant the defendants' motion to strike out certain testimony of Officer Smith, set out in the third exception, was properly denied.

But assuming there was error in the rulings of the Court, in the admission of Officer Smith's testimony as to the owner-

ship and control of the automobile at the time of the accident, it is difficult to see how these rulings could constitute reversible error.

The evidence of the chauffeur and the other witnesses in the case, was legally sufficient to identify and establish the ownership and control of the machine at the time of the accident, and their testimony was before the jury. *Vonderhorst Brewing Co.* v. *Amrhine,* 98 Md. 411; *Stewart Taxi Co.* v. *Getz,* 118 Md. 176.

The defendants' special exception to the plaintiff's first prayer was properly overruled.

Finding no reversible error in the rulings of the Court, and as the case was properly submitted to the jury, the judgment will be affirmed.

*Judgment affirmed, with costs.*