LIBERTY MUTUAL INSURANCE COMPANY
v. AMERICAN AUTOMOBILE INSURANCE
COMPANY ET AL.

[No. 17, September Term, 1959.]

*Decided October 20, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*David M. Buffington* and *R. Roger Drechsler,* for appellant.

*Milton I. Vogelhut,* for appellees.

HORNEY, J., delivered the opinion of the Court.

This declaratory judgment proceeding was instituted by Liberty Mutual Insurance Company (Liberty) against American Automobile Insurance Company (American) and others to obtain a declaration as to which of two insurance policies would be primarily liable for damages recoverable by several persons for injuries they had sustained in an automobile accident. Prior to the filing of this proceeding the injured persons—who were all members of one family—had brought suit for their personal injuries and/or property damage against Harold C. Miller (the father), who was insured by American, and John Robert Miller (the son), who was insured by Liberty.

The record shows that the son, who was a minor, had obtained a "non-owners" policy in conformity with the financial

responsibility laws of this State [Code (1957), Art. 66½, § 93]. In the application for the policy, a renewal of which was in force at the time of the accident, the son—as a condition for obtaining that type of policy—had represented that he did not own an automobile and in fact he did not own one at that time. However, in the interim between the original application and the accident, the son had successively purchased three automobiles and had titled each of them in his name. But, nine days before the accident, he had assigned the title to the most recent acquisition—a 1953 Ford—to his father. It was this automobile, then being operated by the son, which was involved in the accident. The father's policy on the family automobile—a 1955 Pontiac—also insured all subsequently acquired automobiles owned by him.

Liberty could not and did not deny liability to the injured parties under the financial responsibility law, but it asserted that it was liable only as a secondary insurer under the terms of its policy as to excess coverage. It contended that American was primarily liable by the terms of its policy concerning subsequently acquired automobiles.

The testimony of the witnesses, and a deposition by the son, shows that the son alone took care of the maintenance and operated the vehicle. And, while the father procured the loan to pay for the Ford, it was the son who made the payments on the loan. The father also testified that he had not had the title of the Ford changed from his son's name to his own until the lending institution had required him to do so due to the son's minority.

The chancellor, in finding as a fact that the father "was not the 'owner'" of the Ford and that American's policy "did not insure" it, in effect "declared" the rights, status and legal relationships of the parties with respect to the contracts of insurance involved in this proceeding.

The sole issue presented by this appeal is a narrow one. Although several other questions were presented in its brief, Liberty, in the course of its oral argument, frankly conceded that unless an estoppel had in fact been established, *i.e.,* that the father was estopped from denying ownership of the Ford —the chancellor's finding as to ownership must be affirmed.

In effect, Liberty's approach to the issue appears to have a double thrust in that it seeks to have this Court rule as a matter of law that a registered title owner is estopped to deny actual ownership of an automobile, irrespective of the lack of reliance, holding out and those elements usually ascribed to an estoppel *in pais*. Indeed, in this part of its argument, it seems apparent that Liberty assumed, or at least it took the position, that the mere assignment of title to the father, though not under seal, was in effect an estoppel by deed, which precluded the father from denying, to the prejudice of Liberty, that he was not the actual owner of the automobile. In the alternative, Liberty then goes on to argue equitable estoppel.

It is evident that the first tine of this two-pronged argument is not tenable. To so hold would require us to rule as a matter of law that the owner of record in whose name the automobile was titled, was the actual owner irrespective of evidence to the contrary. This Court, and a majority of those of other jurisdictions, have rejected such a contention by holding that title registration merely raises a presumption of ownership, which, not being conclusive, is rebuttable by evidence to the contrary if such is produced. It is, therefore, clearly a question for the trier of the facts to decide. See *East Balto. Transfer Co. v. Goeb,* 140 Md. 534, 118 Atl. 74 (1922) ; *Epstein v. Ruppert,* 129 Md. 432, 99 Atl. 685 (1916) ; 1 Blashfield, *Cyclopedia of Automobile Law and Practice* (Perm. ed. 1955), § 304; 27 A.L.R. 2d 176. In the present case the chancellor found as a fact that the father was not the owner and a review of the evidence precludes a ruling that he was clearly erroneous. Rule 886 a.

The other prong of the dual argument must likewise be rejected. We think it is clear that equitable estoppel or, as it is often called, estoppel by misrepresentation, does not apply to the situation in this case. Equitable estoppel has been defined as "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct,

and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy." 3 Pomeroy, *Equity Jurisprudence* (5th ed. 1941), § 804. Since the application of the doctrine depends upon the facts and circumstances in each case, it will not be applied unless it is shown that the person sought to be estopped has been guilty of some wrongful or unconscientious conduct upon which another relied and was misled to his injury. *Rodgers v. John,* 131 Md. 455, 102 Atl. 549 (1917). See also *Pearre v. Grossnickle,* 139 Md. 1, 114 Atl. 725 (1921).

In the instant case there could not have been any reliance by Liberty on the fact that the title was in the name of the father since it had no knowledge that the father was the registered title owner until after the accident had occurred. Furthermore, under the circumstances, it does not appear that a change in position could have been undergone to Liberty's detriment or the father's benefit even if it had been aware of the title registration. We think it is clear that American and the father were not estopped from denying that he was the actual owner. The decree must, therefore, be affirmed.

*Decree affirmed, the appellant to pay the costs.*