Railroad v. Scales.

---

E. T., VA. & GA. RAILROAD CO. v. N. E. SCALES.

1. **PRACTICE.** *Amendment. Demanding a Jury.* After declaration and plea have been filed, the court may in its discretion, upon application, permit an amendment demanding a Jury.

2. **RAILROADS.** *Secs. 1166–67 construed.* All the requirements of sec. 1166 of the Code must be complied with when " any person, animal or other obstruction " appears upon the road, if it be possible to do so; but if from sudden appearance upon the track it be impossible to comply with *all* the requirements, then the company will not be liable.

---

FROM KNOX.

---

Appeel in error from the Circuit Court of Knox county.    E. T. HALL, J.

GEORGE BROWN for Ralroad.

GEORGE WASHINGTON, HOUK & GIBSON for Scales.

TURNEY, J., delivered the opinion of the court.

Scales sued the plaintiff in error to recover the value of a mare killed on its road by its engine and cars.    There was a verdict and judgment for $800, and appeal.

The first assignment of error is the declaration filed on the 4th of October, 1876, failed to demand a jury. On same day a plea was filed.    On the 5th of October, Scales was permitted, over objection of defend-

ant, to amend his declaration by the addition of the words "and demand a jury." We think there was no improper exercise of discretion in permitting the amendment.

It is next insisted the court erred in overruling the objection to the reading of the deposition of L. L. Gibson. The facts are, notice was given to take the deposition at 2 o'clock, P. M. The attorney for the company attended at that hour and remained until 3 o'clock, when he left. At four o'clock the deposition was taken. We are not prepared to say the objection would not be fatal, if we could see that it in any way influenced the jury. The witness was mainly introduced to prove value—the jury diregarded his estimate and returned a verdict for little more than half the valuation fixed by him and for the least amount stated by any of the witnesses.

The third assignment of error is upon the following facts: The engineer said, "when I saw her the second time, I blew the whistle again and put down the breaks, but I was so near to her it was impossible to reverse the engine before I reached her, but we done all that could be done to stop the train."

The court charged the jury, "That it was provided by sections 1166–67–8–9 of the Code as follows: "In order to prevent accident upon said roads the following precautions shall be observed: Every railroad company shall keep the engineer, fireman or some other person upon the locomotive always upon the lookout ahead, and when any person, animal or obstruction appears upon the road, the alarm whistle shall be

sounded, the breaks put down, and every possible means employed to stop the train and prevent an accident."
" Every railroad company that fails to observe these precautions or cause them to be observed by its agents and servants, shall be responsible for all damages to persons or property occasioned by or resulting from any accident or collision that may occur."

" No railroad company that observes or causes to be observed these precautions, shall be responsible for any damages done to persons or property on its road. The proof that it has observed such precautions shall be upon the company."

" When a railroad company is sued for killing or injuring stock, the burden of proof that the accident was unavoidable shall be upon the company."

" Under these provisions of the above statute, the court instructs you that railroad companies must comply with them; that sub-sec. 5, above quoted, is imperative upon the company; that it must be complied with; and that when any person, animal or other obstruction appears upon the defendant's railroad, and said requirements of the statute are not observed by the agents and servants of the company, said company would be responsible for all damages to person or property occasioned by or resulting from any accident or collision that may occur, and that the company would not be exonerated by showing in such cases that a part of the requirements only of the statute was observed and complied with. The burden of proof is upon the defendants to show that all requirements were observed and complied with. If they were not, and

plaintiff's mare appeared upon the road and was killed or injured, the defendants would be responsible."

The plain meaning of the charge is, that at all times and under all circumstances, without regard to how or when the animal or other obstruction might appear upon the road, or to the possibility or impossibility of an active observance of the requirements of the statute by its agents, the railroad company is responsible in damages for an injury to persons or property, where there has been a failure to do any one of the acts embraced in the language of the statute.

The charge is authorized by and pursues the language in the case of *Nashville & Chattanooga Railroad Co.* v. *Thomas*, 5 Heis., 262, and *Memphis & Charleston Railroad Co.* v. *Guy Smith*, 9 Heis., 860. A careful reading of these cases, however, will show that the facts did not raise the question in either case. On the contrary, they show a failure to observe and to execute the requirements of the statute, arising from the negligence of the engineer. Therefore the reasoning of the Judge who wrote the opinion, and his expression of opinion as to the proper construction of the statute is *obiter*—the court, as we have held in several cases, being only committed to the conclusion, with which we are satisfied in both cases.

If the charge of his Honor the Circuit Judge, and the reasoning of the authors of the opinions cited are sound, it results that said railroad companies are held to the performance of an impossibility in many instances. Construing the statute as a whole, as we must do, its provision that "when a railroad company

is sued for killing or injuring stock, the burden of proof that the accident was unavoidable shall be upon the company," performs a very important office and furnishes a key to the meaning of the Legislature in the passage of the law. Already the burden of proof of the observance of the precautions designated had been forced upon the company in plain language, as we have seen, and there was no necessity for it repetition. The language of the section last quoted shows clearly that the Legislature meant more than a repetition and intended a qualification of the other sections of the act by a provision that if the company could show to the satisfaction of the court and jury, that it was using every possible means to prevent it, and that the accident was unavoidable, without blame or negligence on the part of its agents or employees, it should not then be responsible.

We must so understand the Legislature or hold that while the State has chartered said railroad companies, granted them rights of way to the exclusion of all others, authorized them to transport passengers and freight over their lines of road, and vested in them titles to the lands over which their roads pass, defeasible only on their abandonment of their uses for railroad purposes, and has done all in its power to promote the building and improvement of such roads, yet they must be responsible for all damages to private property resulting from an accident for which no blame can be attached to them, and which no human foresight, activity or attention could have avoided. Considering the magnitude and the constant

growth of railroads and the character of machinery necessary to their operation and its capacity and liability to work hurt and injury to persons and property, the statute is a proper one and should rigidly be enforced; but the enforcement should not extend to the exacting of owners the execution of absolute impossibilities.

Under the construction contended for by Scales, let us analyze a case that might occur. Suppose a railroad is passing through a cut over which is a bridge built by a county for county purposes; that while a train is in the act of passing under the bridge, stock, having congregated upon it, is crowding, and in the press, a banister gives way and some fall off the bridge and on the railroad track immediately in front of the engine and so near to it that it is impossible for the engineer to do any one of the acts prescribed by the statute, and the stock is of course killed. Ordinarily we would say there is no blame attaching to the company—no responsibility to the owners of the stock; the company was in the exercise of its legal right of running upon its track; it was impossible to foresee that the stock was going to fall; the accident was unavoidable, its prevention absolutely impossible; such would be the sound common sense of the matter, and sound common sense is ordinary sound law. The construction urged, however, does away with such rule of law and right and claims its reverse as the statutory rule.

Did the Legislature so intend? We think not. Its purpose was to prescribe and have enforced such

strict rules of precaution and prudence as are commensurate with the power and danger of engines and trains, and to impose upon their managers the exercise of every care, caution and watchfulnes necessary to the protection of life and property and possible to be exercised.    If the Legislature may impose the impossibilities contended for, it may extend them to the abolition of the right of running engines and trains altogether.

The testimony of the engineer raised the question whether it was possible to have done more than was done to prevent the accident, and whether under the circumstances the killing of the mare was unavoidable and without blame or negligence on the part of the agents of the railroad company.

Reverse the judgment.