## GEORGE SHANNON HAVERMALE, BY HIS NEXT FRIEND,

*vs.*

## HENRY C. HOUCK.

*Negligence*: *damages; burden of proof on plaintiff. Automobiles*: *person crossing in front of——. Prayers*: *withdrawing case from jury.*

A prayer withdrawing a case from the jury amounts to a demurrer to the evidence, and upon reviewing such a prayer, on appeal, the Court must consider all the evidence as applicable to the pleadings, in order to determine whether the ruling on the prayer was correct.                          p. 84

In an action for damages for the injuries received because of the alleged negligence of the defendant, the essential element requisite for recovery is some act of negligence either of commission or omission on the part of the defendant or his servants; it is necessary that there be some evidence indicative of negligence in the circumstances surrounding the occurrence, either antecedent to or coincident with the happening of the accident.                          p. 89

The extent of the duty of owners or operators of automobiles to the traveling public requires that ordinary care and caution be used, and the *quantum* of care required is to be estimated by the exigencies of the particular situation.          p. 89

If children on the public streets, unreasonably, intelligently and intentionally run into danger, they should take the risks, and children as well as adults should use the prudence and discretion which persons of their years ordinarily have; they can not be permitted with impunity to indulge in conduct which they know, or ought to know, to be careless.          p. 90

An operator and owner of an automobile was driving at a moderate rate of speed along a clear and unobstructed thoroughfare, when a boy five years and six months old, walking on

the sidewalk, near the curb, and in the same direction as the automobile, suddenly ran out to cross the street, in the middle of the block, at a considerable distance from the regular crossing, and right in front of the car; not having time to stop his car, the operator called out to the child, who, instead of continuing and possibly crossing in safety, started to come back, and was struck by the car; *held,* that there being no evidence adduced by the plaintiff to establish negligence on the part of the defendant, the plaintiff was not entitled to recover.                    p. 90

No matter to what extent or in what respect a party may be negligent, such negligence does not constitute a cause of action unless the negligence charged and the injuries sued for bear the relation of cause and effect.                    p. 90

Actionable negligence is an act or omission of duty which is the approximate cause of an injury; and unless there be negligence, there can be no recovery.                    p. 90

*Decided December 3rd, 1913.*

Appeal from the Baltimore City Court (HARLAN, C. J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*Edward L. Ward,* for the appellant.

*William W. Powell* and *Paul Johannsen,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is an action brought by the plaintiff, an infant, against the defendants to recover damages for personal injuries received from being run over by an automobile, while in the act of crossing Fulton avenue, at or near the intersection of Presstman street, in Baltimore City.

The negligence alleged against the defendants in the plaintiff's declaration, is the want of proper care on the part of the defendants, in the handling, running and operating of an automobile, belonging to the defendant, on or about the 15th

day of January, 1911, at or near the streets above named, in the City of Baltimore.

The injury is alleged to have been directly caused by the negligence and want of proper care on the part of the defendant, in operating the machine, and without fault on the part of the infant plaintiff contributing directly thereto.

The record contains a single exception and that is, to the action of the Court below, in granting the defendant's prayer, at the conclusion of the plaintiff's testimony, which instructed the jury, that under the pleadings in the case there was no evidence legally sufficient to entitle the plaintiff to recover and their verdict should be for the defendant, upon the issues joined.

The record shows, that the suit was originally brought against Dr. Henry C. Houck and Ella May Houck, his wife, defendants, but it was dismissed on the 6th day of March, 1913, as to the defendant, Ella May Houck. On the 10th day of March, 1913, a judgment absolute, was entered on the verdict in favor of the defendant, Henry C. Houck, for costs, and it is from this judgment that the plaintiff has appealed.

The single question presented for review on the record now before us, is the action of the Court below, in its ruling upon the defendant's prayer, which withdrew the case from the jury and directed a verdict for the defendant. The defendant's prayer amounted to a demurrer to the evidence, and it therefore, becomes necessary to consider the evidence as applicable to the pleadings, in order to determine whether the ruling here complained of, was proper and correct.

The amended declaration, is in the usual form, and avers in substance, that the defendants, were on or about the 15th day of January, 1911, at about 5:20 P. M., running, operating and in control of an automobile on Fulton avenue near Presstman street, in the City of Baltimore, and that George Shannon Havermale, the equitable plaintiff and an infant under twenty-one years of age, while in the act of crossing Fulton avenue at its intersection with Presstman street, in the city, was run into and upon by the automobile so being

run, operated and controlled by the defendants, and the infant plaintiff was knocked down and run over by the automobile at the place aforesaid, while being run, operated and controlled by the defendants, and that by virtue thereof the infant plaintiff was greatly cut and bruised about the knees, hips, head and body, and his right leg was broken between the knee and hip, and he was thus absolutely and permanently injured, and was and became for a long time thereafter sick, sore and wounded, and made to suffer great physical pain and mental anguish, and other wrongs to the plaintiff then and there done, all of which the plaintiff says was directly caused by the negligence and want of proper care on the part of the defendants, in the handling, running and operating of the automobile, and without fault on the part of the infant plaintiff directly thereto contributing.

The evidence shows, that the plaintiff was an infant, and at the time of the accident, was between five and six years of age. He resided with his father at 1518 N. Fulton avenue, which is the west side of the street, and was injured about 5:20 P. M. on Sunday afternoon of the 15th of January, 1911, while attempting to cross from the west side of Fulton avenue at or near the intersection of Presstman street, to the east side thereof. Fulton avenue, at or near Presstman street, runs north and south, and the plaintiff was about midway of the street when struck by the machine.

The plaintiff's father testified that there are three houses between the northwest corner of Fulton avenue, Presstman street and the Dunkard Church, which sets back about ten feet from the building line and that his home is the second door north of the church. That on Fulton avenue at Presstman street there are two street pavements, one runs north and one south, there is a grass plot that is curbed and the grass plot is about twelve or fifteen feet wide and is curbed around with a six-inch curb; that the car tracks lay next to the curb next to the grass plot, the east car truck runs to the east of the plot and the other car track to the west. That Fulton avenue at Presstman street is twenty-four feet six

inches wide from the west curb to the curb of the west side of the grass plot, and the accident happened there. That the distance from the west curb line of Fulton avenue to the car tracks is seventeen feet and from the car tracks to the west curb of the grass plot is seven feet and six inches and the bed of the street is paved with sheet asphalt. That Harrison's Hall is directly opposite his house on the east side of Fulton avenue north of Presstman street. He further testified, that when he got the boy home, after the accident, he began complaining about his stomach hurting him. That when he took hold of the right leg it turned over and he found that it was broken between the knee and the hip, closer to the hip than to the knee. That when the boy was on the operating table he saw two cuts like something had forced up across his testicles, that his ear was bruised and the right ear was mashed down close to his head. That Dr. Houck came to his home that afternoon after the accident, about the time he got home with the boy. That when he found the boy's limb broken he asked Dr. Houck "What could have broken the boy's limb?" and that Dr. Houck said: "Your boy went to cross the street in front of my machine, and I hollered at him and the boy stopped and the left spring of my automobile struck the boy there." That he was taken to the Maryland General Hospital the evening of the accident, in the defendant's automobile and placed in a free ward by Dr. Houck.

The plaintiff's witness, Yingling, who saw the accident, testified, that when the accident happened he was standing on the west side of Fulton avenue north of Presstman street, toward North avenue. That there is a Dunkard Church on the west side of Fulton avenue north of Presstman street and he was standing very near at the corner of that church. That Mr. Havermale lives about the second house north of the church and he was standing right at the corner of the church and the house next to Mr. Havermale. That he was standing there talking to some man who had also been to church and before the accident happened the man left and went down the street and he stood still there and looked around like he

always does. "I guess it was about twenty minutes after five, not later than half-past five, when the boy came out of the house and passed me and the boy had his back this way (indicating), and as he was going up to cross Presstman street, then this automobile came along, and when the automobile came along the boy was going across and the automobile came pretty lively and it hit him, and when it hit him it ran over him and the automobile went kind of that way, crooked like, to stop so that he could stop his machine, and I hear someone holler and I did not know who it was that hollered at all." That he first saw the boy when he came out of the house and he passed him on the church pavement; that there are two or three houses on the corner between Presstman street and the church, then comes the church and then comes the house and next to that comes Havermale's house. That the boy came out of the house and passed him on the church pavement. That he saw the boy step off the pavement into the street and that he first started to cross the street at Fulton avenue and Presstman street, right above the church and had just finished crossing the church pavement when he went into the street; that the automobile was about twenty-five or thirty feet from the boy, when he was running along and stepped into the street and the machine struck him when he was about half way across the street. He did not hear a horn blow, but heard someone holler. The machine hit the boy, knocked him down and ran over him. The machine was on the west side of Fulton avenue and running about twelve miles an hour. There were no obstructions in the street or on the sidewalks.

The witness testified upon cross-examination, that while he was standing there that the little boy came out of the house, ran up the street, and suddenly left the curb and started to cross the street; that the boy had his back to the automobile and when he started to cross the street he kind of turned this way (indicating diagonally). That he does not suppose the boy looked behind to see what was coming and started to cross the street, that he was not going very fast as

he was a little tacker and could not run so fast. That the automobile hit him and knocked him down, and ran over him. That he does not know whether or not the automobile hit him on the left side, that he did not see it hit him on the left side, that he saw it hit him and run over him.

Q. Would not the automobile hit him on the left side if the boy had been hit as you described? A. I do not know; the automobile could have hit him when he was half way across. Q. But if he had crossed from the west side of Fulton avenue to the east side——. A. He had not crossed yet, he was starting to cross.

Mrs. Havermale the mother of the plaintiff testified, that she did not see the accident but that the defendant called at her house the next day, after the accident and said, "when he first saw the little boy he was running down the church pavement and then he did not see any more of him until he was nearly across the street and it frightened him and the first thing he thought of was to holler." He said, "You know, you do not think of anything else." I said, "If he was crossing from this side, tell me how you broke his right limb?" He says, "When I hollered it confused the child and he started to turn back, and my left spring hit him on the right leg and broke it," and that if he had not hollered the child would have made it across the street.

We have thus stated the substantial facts, as reflecting upon the right of the plaintiff to recover and we think that the evidence, in the case, is entirely insufficient to prove that the injury was directly caused by the negligence and want of proper care on the part of the defendant, in operating the automobile, at the time of the accident, and without fault on the part of the plaintiff.

The burden of proof, in this and like cases, was upon the plaintiff to show that the injury was directly caused by the negligence of the defendant as alleged in the pleadings. The ruling of the lower Court that there was no evidence legally sufficient to entitle the plaintiff to recover, will not be dis-

turbed, unless it appears there was some evidence tending to establish negligence on the part of the defendant.

In *Schier* v. *Wehner,* 116 Md. 554, it is said, the essential element requisite for a recovery is some act of negligence either of commission or omission on the part of the defendants or their servant, and it is necessary that there be some evidence indicative of negligence in the circumstances surrounding an occurrence, either antecedent to or coincident with the happening of the accident.

In the recent case of *Winner* v. *Linton,* 120 Md. 280, it was said, the extent of the duty of owners and operators of automobiles to the travelling public are defined by a number of cases. Ordinary care and caution must be used and the quantum of care required is to be estimated by the exigencies of the particular situation. *Fletcher* v. *Dixon,* 107 Md. 425.

In the case at bar, the defendant was going south in an automobile on the west side of Fulton avenue at a lawful rate of speed, and according to the testimony of the only witness who saw the accident, "the boy came out of the house, ran up the street, suddenly left the curb and started to cross the street," in front of the moving automobile; "that the boy had his back to the automobile and when he started to cross the street he kind of turned this way (indicating diagonally), that he does not suppose the boy looked behind to see what was coming and started to cross." He attempted to cross from the west to the east side of Fulton avenue, at a place, that was at least the width of three houses from the north side of the footway of Presstman street, and not at a regular crossing of the streets.

In *Hayes* v. *Norcross,* 162 Mass. 546, the Supreme Court of Massachusetts, in dealing with a cause, resting upon a somewhat similar state of facts, held, that a boy of five years and six months old, who was injured by being run over by the defendant's team, could not recover because at the time of the accident he was not exercising due care.

In *Collins* v. *South Boston Railroad,* 142 Mass. 301, it was said: It would seem that, if children unreasonably, in-

telligently and intentionally run into danger, they should take the risks, and that children, as well as adults, should use the prudence and discretion which persons of their years ordinarily have and that they cannot be permitted with impunity to indulge in conduct which they know or ought to know to be careless, because children are often reckless and mischievous. *Babitt on Motor Vehicles* 981; *Casey* v. *Smith,* 152 Mass. 294; *Messenger* v. *Dennie,* 137 Mass. 197.

The cases of *McMahon* v. *N. C. R. R.,* 39 Md. 438, *Con. R'y. Co.* v. *Rifcowitz,* 89 Md. 338, *United Railways* v. *Carneal,* 110 Md. 211, and the other cases relied upon by the appellant are entirely unlike this. In each of those cases there was positive evidence of negligence apart from the accident itself and it was so stated by the Court in deciding them.

Apart from the want of care upon the part of the plaintiff in this case, in attempting to run across the street, in the manner, and under the circumstances, shown by the evidence, the plaintiff failed to establish or to offer any evidence tending to show, such negligence upon the part of the defendant, as entitled him to recover.

It has been repeatedly held in this State that no matter to what extent or in what respect a party may be negligent, such negligence does not constitute a cause of action, unless the negligence charged and the injures sued for, bear the relation of cause and effect. Actionable negligence is an act or omission of duty which is the proximate cause of an injury. Unless there be negligence there can be no recovery. *Benedict* v. *Potts,* 88 Md. 53; *United R'y. & Electric Co.* v. *Durham,* 117 Md. 192; *Young Company* v. *Kabat,* 117 Md. 247; *Coughlin* v. *Blaul,* 120 Md. 35.

Upon a careful review of the testimony in the case now before us, we think, it is apparent that the plaintiff has failed to establish his case, and as the evidence was legally insufficient, under the pleadings, to entitle the plaintiff to recover, the judgment will be affirmed.

*Judgment affirmed, with costs.*