ROBERT ATKINS v. CLARENCE SMITH, By Next Friend, C. D. SMITH.

Eastern Section. January 7, 1928.

Petition for Certiorari denied by Supreme Court, March 17, 1928.

Lawrence & Lawrence, of Knoxville, for plaintiff in error.
S. E. Hodges, of Knoxville, for defendant in error.

SNODGRASS, J. Plaintiff below, Clarence Smith, by next friend C. D. Smith, sued the defendant Robert Atkins for a sum under five hundred dollars, alleged as damages for personal injuries to

the minor, sustained, as the warrant sets forth, on or about the 15th day of October, 1926, on Leslie street, within the corporate limits of the city of Knoxville, Tennessee, by the said minor being struck by an automobile operated by the defendant, in violation of the laws of the State and the city of Knoxville, and in a negligent manner, resulting in cuts and bruises on plaintiff's head, and injury to plaintiff's nose, shoulder and other parts of his body.

A trial was had before the justice, who gave judgment in favor of the plaintiff and against the defendant for $150. On appeal of defendant the cause was heard before the Circuit Judge without the intervention of a jury, who rendered a judgment in favor of the plaintiff and against the defendant for the same amount, with all costs, awarding execution therefor. On his motion for a new trial being overruled the defendant has appealed to this court, and now, as plaintiff in error, with reference to the judgment, complains that—

"The trial court was in error in rendering judgment and in overruling his motion for a new trial, and in taxing him with the costs of the cause, for the following reasons:

"1. Because there is no evidence to support the judgment.

"2. Because no actionable negligence upon the part of defendant has been shown.

"3. Because under the evidence disclosed plaintiff was guilty of contributory negligence, which in law bars his right to recovery against the defendant."

We have carefully considered the evidence in this case, and are convinced that all of the assignments are well taken.

The boy, who was seven years of age, at the time of the accident, was not examined. The father stated that he "did not bring him here as a witness today in his case;" that he was in school, in B grade. The only other eye witnesses to the immediate facts of the collision were the plaintiff in error and his wife. The attention of others was directed to the scene just before and after the accident, but their testimony in no way requires the discrediting of the clear and satisfactory statements of the said plaintiff in error and his wife as to how the accident occurred. There is no proof that the plaintiff in error was violating any provision of the ordinance that was introduced, and the case resolved itself inevitably into the insistence that, notwithstanding any negligence that may have characterized the actions of the child, the plaintiff in error was negligent in not seeing the child in time to have stopped his car and prevented the accident.

All the proof indicates that the plaintiff in error, going west on Leslie street, and after driving around a truck of the Power & Light Company standing, it was said, at the corner of Leslie and 16th

streets, had resumed his place on the right hand side of the street, and at this time was about seventy-five feet from the place of the accident. Plaintiff in error testified:

"As soon as I had rounded the track I drove back on the right hand side of Leslie street—right of the center—and the speed of my car was about ten miles an hour. I could not go faster there, for the street was rough. When I reached the place of the accident a two-horse wagon, it looked like a slop wagon, was passing going east on Leslie street, and in the center of said street. The first I saw of the little boy he came out from behind this wagon, running with his hands up before his face like as if he had swung off the hind end of the wagon. He was four feet of my car when I first saw him. He was making at me, but not looking towards me. He had his head turned, looking backwards. I saw he was going to run into me, and if I had stopped still right then he would have run against my car, striking it between the left front door and the radiator. I swerved to the right and stopped my car within its length, but the boy had struck the car. He ran against its left rear door and fell back into the center of the street. My wife and I got out and picked him up and a little boy nearby told us where he lived, and we carried him to his home." On cross-examination he said:

"The child was not picked up behind the car. I did not run against him, he ran into me, bumped into the rear door of my car. When we picked him up he was lying on his side in the middle of the pike, about even with my left hind wheel and south of it. I put on my brakes and did all I could to keep him from running against my car. I did not see him until he was about four feet from me; that wagon kept me from seeing him; it obstructed my view of him, wherever he was. The boy had his hands up like he had let go of the hind end of the wagon. I don't know that he had hold of the wagon, as I did not see him ahold of it. No, I don't know who was driving the wagon. The wagon did not stop, and got away before I learned who he was. I have tried to find him. I saw a fellow one day driving what I thought to be the wagon, but. I did not ask him, because he was going in the opposite direction from me. I had not had any liquor that day. Yes, I drink a little sometimes."

The foregoing is substantially the testimony of Mrs. Atkins as to the immediate facts of the accident. The defendant in error and his wife testified as to the character of the injuries. Neither of them saw the accident. The mother, Mrs. Smith, said that just before the accident Clarence went across Leslie street to play with

a boy friend, and in going there he had to cross Leslie street, but she did not see him crossing the street. In addition to testifying as to the character of the wounds, both she and her husband say the boy was unconscious all night, and that his clothes were dirty all over. They also introduced a Mr. Daniel Jones, who said that he was a line man, and was going down a telephone pole at the time of the accident; that the defendant's car passed him going west on Leslie street; that he looked down the street and saw the kid start across Leslie street from the south side toward the north side; that he was out in the street about eight feet when he last saw him, until after the accident; that D. Hamilton, a man working with him called his attention to it; that when the kid was about eight feet from the south side of Leslie street the defendant's care looked about fifty feet of being at the point of accident, running on the right hand side of the center of Leslie street; that he did not know how fast defendant's car was running, as he was above him; that he saw Mr. Atkins pick the kid up; that the defendant's car was in between witness and the kid; that the kid was picked up near the center, opposite the left front wheel of the car. On cross-examination he stated that he did not see the defendant's car strike the kid; that he could not say whether the car struck the kid or the kid ran into the car; that the defendant stopped his car on the right hand side of the street, a short distance from the place of the accident; that he did not see any wagon there; that he was not looking for any; that it looked like he would have seen one if any had been there.

It was agreed that said D. Hamilton, who was not present, if he had been there would corroborate the statements of Mr. Jones.

In addition to what has been stated as to the injuries, Dr. W. G. Cassenberg was introduced by the defendant in error, and testified as follows:

"I waited on Clarence Smith after he got hurt in the accident. The child was injured rather extensively, all over his body. He suffered a cut over his left temple to the bone, about one and a half inches in length, and he had a wound on his scalp. Blood was running from his nose and ears. His shoulder was bruised, and his back was injured and bruised. There were no bones broken at all. He was bruised all over his body; looked like he had been rolled. There might be a permanent scar over his left eye. I do not know the amount of my bill, I treated him about two weeks." On cross-examination he said:

"The only blood that I saw was that which came from his nose and ears. There were no permanent injuries as far as I could tell."

Lawrence Lemons, a witness for the defendant, testified that the speed of the car was not more than twelve or fifteen miles an hour; that he saw defendant drive his car sharply to the right and stop his car with the right front wheel in the ditch. Witness was standing about twenty-five feet away from the place of the accident; that defendant was driving his car on the right side of Leslie street, going west at the time of the accident; that he did not see the car strike the child, and did not know whether the car struck the child, or the child ran into the car, but the boy was on the other side of the car when he saw Mr. Atkins stopping the car; that the car was stopped only a few feet from the boy; tha the boy was not behind the car; that he did not see any wagon there; that the accident happened at a point about midway of the block; that he was close to Mr. Atkins after the accident, but did not smell any liquor on his breath. On cross-examination he said he did not see the wagon there, though there might have been one; that the boy was near the center of the street after the accident.

Walter Badget, another witness, did not see the accident, getting there a few minutes after it happened. He testified that he turned into Leslie street about one-half block from the place of the accident; that he noticed a two horse wagon on Leslie street, coming east from the direction of the place of the accident; that it passed him as he entered Leslie street; that he had come out of 16th street into Leslie. On cross-examination he said that was the only wagon he saw, and that he noticed a Power & Light truck standing up there near the corner on the north side of Leslie street; that this was near the corner of 16th and Leslie.

Defendant in error, Smith, recalled, stated that the first he heard of a wagon was on the trial of the cause before the justice of the peace; that after that he asked every junk dealer in the neighborhood who had a team and wagon, and found no one who knew anything about the accident.

It is submitted that under the rules of evidence there was no material conflict that would justify disregarding the testimony of the plaintiff in error as to how this accident occurred, or authorize the finding of a liability. The law presumes that every man speaks the truth, unless there is some irreconcilable obstacle to the entertaining of that presumption. It is the duty of the court to reconcile the testimony if it can do so consistently with reason and truth, so as to allow it all to stand as the truth. One way of reconciling testimony is to apply the rule as to positive and negative testimony. Positive testimony is, where a witness says a thing occurred; that he saw or heard it, as the case may be; while negative testimony is, where a witness says if a thing occurred that he did not see or hear it, as the case may be. In a case like that the positive testimony of

the witness should be accepted, since there is not necessarily a conflict. But where a witness testifying negatively had an equal opportunity to see and know, and had their attention called to the matter, then a conflict would arise, that would have to be determined in some other way. In this case there was no such positive negative testimony as amounted to the dignity of a conflict. Neither of these negative witnesses had his attention called to the matter of the wagon, and the circumstances were such as it might very reasonably have escaped their observation.

Neither do we think it impossible that the child should have received from the impact the character of injuries shown. Knocked down and rolled over in the rough street, it is but natural that he should have received various bruises, and that his clothing should have been very generally soiled.

Giving the testimony of the plaintiff in error and his wife the credence which we are not authorized to withhold, we do not see any evidence of actionable negligence committed by them in the premises. Plaintiff in error in his brief cites the case of Barger v. Bissell, 188 Mich., 366, 154 N. W., 107, a case very similar to this one, where it was held that there was no actionable negligence shown.

He also cites the case of Paul v. Clark, 161 App. Div. (N. Y.), 456; Sullivan v. Smith (Md.), 91 Atl., 456 (1914); Lovett v. Scott (1919), 232 Mass., 541, 122 N. E., 646; Razza v. Williams (1923), (R. I.), 119 Atl., 318: and Havermale v. Houck (1913), 122 Md., 82, 89 Atl., 314, to the same effect.

The cases of Havermale v. Houck and Sullivan v. Smith, supra, and Moran v. Smith, 114 Me., 55, 95 Atl., 272, and Mills v. Powers, 216 Mass., 36, 102 N. E., 912, are cited as exhibiting evidence wholly sufficient to show contributory negligence on the part of the child.

While it is held that contributory negligence on the part of a minor is to be measured by his age, and by his ability to discern and appreciate circumstances of danger, and that he is not chargeable with the same degree of care as an experienced adult, but is only required to exercise such prudence as one of his years may be expected to possess, it is nevertheless true that, when made out, it would bar a recovery. Queen v. Dayton Coal & Iron Co., 95 Tenn., 458, 32 S. W., 460.

As to the age at which a child may be regarded as capable of negligence, the courts are divided in opinion. Regarding such matter our own Supreme Court, in the case of Wells v. McNutt, 136 Tenn., 274, 189 S. W., 365, in discussing this difference said:

"We are of opinion that the true rule in civil actions is, that there is a presumption, nonconclusive and rebuttable in

character, that a child under seven years of age is not guilty of contributory negligence for lack of capacity. . . .'' That ''Prima facie a child of six is not guilty of contributory negligence, but the defendant is not precluded from insisting that under the facts disclosed in the particular case, the infant had capacity to be and was negligent. The capacity of the infant is, then, one of fact for the jury to pass upon, and one not of law for the court.''

In such case the presumption would be that the child was incapable of negligence, and though negligence might appear of a proximate nature, nevertheless to defeat a recovery the defendant would have to show that the child was capable of negligence as a matter of fact, a question for the jury to determine. As a corollary it would also be true that, if the child was seven years of age, the presumption would be that it had capacity to be negligent in such a way as to bar a recovery; and the fact of proximate negligence appearing from the uncontradicted proof of the plaintiff in error and his wife, regarding which there could be but one conclusion, i. e., that instead of running against and over the child, the child negligently ran against the car and received the injuries, nothing appears to prevent the presumption of capacity, and, therefore, the right of action was barred.

Reversed and dismissed, with costs against appellee.

Portrum and Thompson, JJ., concur.