**UNION RY. CO. v. WILLIAMS.**
No. 11150.

United States Court of Appeals
Sixth Circuit.

Jan. 22, 1951.

Rehearing Denied April 2, 1951.

490

Cooper Turner, Jr., Memphis, Tenn. (Cooper Turner, Jr., on the brief; Canada, Russell & Turner, Memphis, Tenn., of counsel), for appellant.

John D. Martin, Jr., Memphis, Tenn. (John D. Martin, Jr., S. Shepherd Tate, Memphis, Tenn., on the brief), for appellee.

Before HICKS, Chief Judge, and SIMONS and MILLER, Circuit Judges.

HICKS, Chief Judge.

Action by appellee, Jesse Williams, to recover damages of appellant, Union Railway Company, for personal injuries.

On July 28, 1938, appellee, a Negro boy attempted to "hop" a train pulled by one of appellant's engines. He caught hold of a rung of the ladder on a tank car and put one foot in a lower rung, when his foot slipped, his head hit some part of the car and he was thrown under the train and lost both legs.

The jury returned a verdict in his favor for $20,000, upon which judgment was entered; hence this appeal.

We consider (1) the motion of appellant for a directed verdict made at the close of the evidence; and (2) the motion for judgment notwithstanding the verdict.

The gravamen of the complaint relating to the accident was, in substance, that appellant negligently, carelessly, regularly and by custom permitted boys of tender age to board its moving trains without objection, although it knew that such practice was extremely dangerous, and that the proximate cause of appellee's injury was appellant's failure to exercise reasonable care for the safety and protection of appellee and other boys of like immature age.

There is no material dispute relating to the facts of the accident.

Appellant operated a terminal railroad through and around the populous city of Memphis. Its trains carried no passengers or passenger cars. Its sole operation upon its main line and switches was to serve many industrial enterprises along its route. Its servants invited no one to ride its trains.

Appellee, aged eleven years and four months, lived with his mother in the Hollywood section of the city and about five or six blocks from the railroad. He attended the Hyde Park school, located hard by the railroad tracks. He was in the fifth grade and would have been in the sixth had it not been for an illness which kept him out of school for a year. He was of fair average in his classes, not the smartest, not the dumbest. After school closed in the spring of 1938, he busied himself with cutting the lawns of his neighbors for a small compensation.

The railroad ran through the Hollywood section westwardly to and beyond Washington Park, a park for negroes, and in which there was a swimming pool. On the morning of the accident, appellee, along with thirty or forty other Negro boys,

caught the train near the school and rode on it undisturbed about five miles to the park. There they enjoyed the swimming pool until the return trip of the train running eastwardly. The train was backing with the engine in front and the tender or tank in front of the engine. It was a daily habit and custom for boys in large numbers to mount the train at various points along its railroad.

Upon the motion for peremptory instructions we must take that view of the evidence favorable to appellee. He testified that after he, with a number of other boys, left the swimming pool they congregated at a convenient spot by the track near the Marble Street crossing. It was their purpose to catch the train for the return trip. Before the accident happened appellee, during the summer, made eight or ten trips to the park. The train itself consisted of the engine and tender, a box car next to the engine, and five tank cars. Appellee intended to catch the box car but another boy went ahead of him and he then attempted to catch the second tank car and was injured as indicated above. The train was running slowly, i. e., somewhere between a walking or trotting pace, and eight or ten miles an hour.

It is clear that appellee was a trespasser and if he had been of mature age appellant would have owed him only the duty of refraining from intentionally injuring him. Illinois Cent. Railroad Co. v. Meacham, 91 Tenn. 428, 19 S.W. 232. Simply stated, he would have been an intruder upon a switching train which carried no passengers and appellant would not have been liable for any inadvertence or negligence of its employees. But, as pointed out, appellee was only between eleven and twelve years of age and it must be expected that children of that age will act upon childish impulses and instincts. They are bound to use only such care as is ordinarily exercised by children of like age and intelligence. Townsley v. Yellow Cab Co., 145 Tenn. 91, 92, 94, 237 S.W. 58; Marion County v. Cantrell, 166 Tenn. 358, 359, 362, 61 S.W.2d 477; Southern Ry. Co. v. Whaley, 170 Tenn. 668, 677, 98 S.W.2d 1061; Union Pac. Ry. Co. v. McDonald, 152 U.S. 262, 277, 14 S.Ct. 619, 38 L.Ed. 434. Whether appellee was guilty of such contributory negligence as to bar his recovery by attempting to "hop" the train, was peculiarly a question for the jury, taking into consideration his age, experience and ability to discern and appreciate danger. Wells v. McNutt, 136 Tenn. 274, 275, 189 S.W. 365; Atkins v. Smith, 9 Tenn.App. 212, 217. It is true that he had had considerable previous experience, that he knew of the most convenient and available spots at which to catch the train, and that he further knew that if he told his mother that he was catching trains he would be punished. However, the probative effect of this testimony is not for us to decide. Camden Interstate Ry. Co. v. Broom, 6 Cir., 139 F. 595, 598. Such circumstances and others not here mentioned were not conclusive as against appellee. They were only relevant to appellant's defense that notwithstanding appellee's age he was guilty of contributory negligence. Wells v. McNutt, supra, 136 Tenn. at page 277, 189 S.W. 365; Queen v. Dayton Coal & Iron Co., 95 Tenn. 458, 465, 32 S.W. 460, 30 L.R.A. 82. We conclude that upon this review we do not reach the question of contributory negligence.

We come now to the consideration of the question of proximate cause.

There is no room here for the "last clear chance" doctrine exhaustively considered in Todd v. Cincinnati N. O. & T. P. Railroad Co., 135 Tenn. 92, 185 S.W. 62, L.R.A.1916E, 555 and Tenn. Cent. Ry. Co. v. Ledbetter, 159 Tenn. 404, 19 S.W.2d 258. At the time of the accident the crew was busy with its various duties but at least one of them, Ralph Sheffield, riding on the front or leading end of the tender, saw the group of boys approaching the track. Whether they were approaching or standing by the track, as testified to by appellee, is not material on this phase because Sheffield saw appellee "miss the cut of cars" and immediately gave the alarm. After appellee had subjected himself to peril by hopping the tank car, his injury was inevitable. Nothing that appellant's servants could have then done would have saved him. There was no conscious misconduct

on the part of the servants of appellant after appellee had exposed himself to danger.

But appellee goes beyond this and contends that when appellant's servants saw appellee and his companions standing by the track or approaching it they should have anticipated that appellee intended to catch the train and should have prevented him from so doing by protective measures. Appellee relies heavily upon Burke v. Ellis, 105 Tenn. 702, 58 S.W. 855. See also Townsley v. Yellow Cab Co., supra, 145 Tenn. at page 94, 237 S.W. 58.

There is nothing difficult in Burke v. Ellis. In that case the court said that it was negligence *per se* to permit a child six or seven years of age to climb upon and ride a car loaded with loose earth that was liable to slip and throw the child off at any time, and that an open car loaded with earth is such an inducement as would naturally lead children into danger but it was negligence not to keep them away from the cars under the circumstances. The court further said that there was proof tending to show that the child was not only permitted but invited by the railroad employees to ride, and with the knowledge of the superintendent. Here there is no evidence of any invitation.

In its final analysis we come to a consideration of just what degree of care appellant owed to appellee.

The evidence shows that for a long period prior to the accident and especially in the summer of 1938, boys singly, or in groups, would catch the trains in the Hollywood section and ride to the swimming pool and return in the same manner. The trainmen of course might have anticipated such conduct on the part of appellee and his companions because it was of daily occurrence. It is a well recognized rule of the common law that a failure to take special precaution against a danger that is only remotely possible is not negligence. Carter v. Yardley & Co., 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 559. However, under the circumstances we think it may well be said that appellant owed to appellee ordinary or reasonable care to protect him because children of tender years are entitled to a degree of care from others in proportion to their inability to foresee and avoid the perils which they may encounter. Townsley v. Yellow Cab Co., supra, 145 Tenn. at page 91, 237 S.W. 58. This has been the recognized law in Tennessee for more than ninety years. Whirley v. Whiteman, 38 Tenn. 610. But ordinary care and reasonable care, after all, are relative terms. Learned counsel for appellee has presented to us no distinct theory upon which appellee relies to support the verdict and judgment in his favor and our examination of the record reveals none. Appellant is entitled to know the facts which may become a basis for a judgment against it. Upon the trial the burden was upon appellee to sustain his action to show not only that appellant was negligent but that such negligence was the proximate cause of his injury. Such must be shown with reasonable certainty and not by conjecture. See Southern Railroad Co. v. Pugh, 97 Tenn. 624, 628, 37 S.W. 555; Memphis St. Ry. Co. v. Cavell, 135 Tenn. 462, 466, 187 S.W. 179.

We think that a fair definition of "due care" or "ordinary care" or "reasonable care" in the instant case is the conduct of the average prudent crew operating a switching train under the circumstances here involved. "No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man." Sanford-Day Iron Works v. Moore, 132 Tenn. 709, 713, 179 S.W. 373, 374. No one may be held to an unreasonable degree of care, nor, as pointed out above, to the performance of impossibilities. See East Tennessee, V. & G. Railroad Co. v. Scales, 70 Tenn. 688, 692. The engineer was at his post on the right side of the engine opposite appellee. The fireman was firing the engine and the other three members of the crew were upon the tank or tender. The foreman, Haynes, was on the foot board on the engineer's side of the tank, and as indicated above, Sheffield was on the foot board on the opposite side. There is no evidence that these men were not on the lookout. Nothing more appearing than that the group of boys was along-

side the train, it certainly was not negligence to fail to make an emergency stop at least until one or more of them had in some manner indicated that he would attempt to board the cars, even though the trainmen knew of the custom of the boys. Horn v. Chicago, M. & St. P. R. Co., 124 Iowa 281, 99 N.W. 1068. See also Louisville & N. R. Co. v. Steele, 179 Ky. 605, 201 S.W. 43, L.R.A.1918D, 317; Green's Adm'r v. Maysville, etc. R. Co., 78 S.W. 439, 25 Ky.Law Rep. 1623. Such a requirement would render it unreasonably difficult for appellant to operate its train at all. It would require a continuous succession of stops and starts. It would be just as unreasonable to require appellant to erect unsurmountable fences along its right of way to keep out youthful trespassers. It could not fence at street crossings or at the entrance to the industrial plants along its road and which it was serving. See Nolley v. Chicago, M., St. P. & P. R. Co., 8 Cir., 183 F.2d 566, 569.

We have not found that any court has gone so far as to require railroad companies to patrol its tracks or police its trains with a sufficient number of guards to prevent boys from attempting to board them. Angiline v. Norfolk & W. Ry. Co., 99 W.Va. 85, 128 S.E. 275, 43 A.L.R. 34; Oregon R. & Nav. Co. v. Egley, 2 Wash. 409, 26 P. 973, 26 Am.St.Rep. 860; Wilson v. Atchison, T. & S. F. Ry. Co., 66 Kan. 183, 186, 71 P. 282. At one time, however, such a measure was tried by appellant but it was wholly ineffective and the record indicates further that at various times appellant's agents would ask the cooperation of the school teachers in the community in their effort to abate or at least limit the habitual practice of school children boarding the trains.

From our viewpoint we find it unnecessary to review the question whether a judgment of the state circuit court in August 1938 approving the settlement of a suit between appellee's mother as his next friend, and appellant, should be set aside for fraud.

Neither do we consider the alleged error in the court's charge further than to say that the excerpt complained of was more clearly applicable to a situation arising un-

der the Tennessee Railroad Statutory Precautions Act, Code, § 2628 et seq., where the injured party was on the track ahead of the train and was struck by the engine.

We think that the motion for judgment notwithstanding the verdict should have been granted and the case is therefore remanded to the district court with directions to grant the motion and dismiss the case.

Reversed.