SOPHIE REPASKY, PLAINTIFF-APPELLANT, v. BARNEY NOVICH, DEFENDANT-RESPONDENT.

Submitted February 16, 1934—Decided May 4, 1934.

For the appellant, *Jacob Fox.*

For the respondent, *Joseph Coult* and *John J. Francis.*

The opinion of the court was delivered by

PERSKIE, J. This appeal brings up for review a judgment in favor of the defendant-respondent (hereinafter called defendant) and against the plaintiff-appellant (hereinafter called plaintiff) based on a jury verdict directed by the learned trial judge below.

The propriety of that direction depends entirely on the determinative fact whether or not the plaintiff was on the defendant's premises at the time of the accident.

The trial judge decided, on what he conceived and held to be the undenied testimony of the plaintiff, that she was on the defendant's premises; that she was there by the mere passive acquiescence of the defendant and therefore he was under no obligation to her except to abstain from acts which are willfully injurious; and, that since there were no proofs of any such acts on the part of the defendant, he, the judge, felt constrained and accordingly did grant the motion for a direction. *Saunders* v. *Smith Realty Co.,* 84 *N. J. L.* 276, 279.

Defendant owns premises 476 Bergen street, Newark, New Jersey. It consists of a three-story, six-family dwelling. Defendant occupied a second floor apartment thereof. At or near the end of said building is the kitchen of the apartment. The front of the building extends the full width of the prop-

erty line. A short distance from the front of the premises the building becomes narrower, a sort of recess or cut-off in the building, and from the latter point there is an alleyway of brick or stone, three feet nine inches in width and running the full length of the rest of the building.

The plaintiff was a tenant in the adjoining premises, 478 Bergen street. There also appears to be an alleyway between the defendant's property line and the full length of the building of the house in which the plaintiff lived. This alleyway adjoins the defendant's alleyway and from the beginning point of the latter runs parallel thereto to the end of the building in which the plaintiff lived. It is two and one-half feet in width and is made of gravel. The building on 476 Bergen street is longer than the building on 478 Bergen street. Each property has a back yard.

On December 18th, 1931, the plaintiff, while putting or dumping ashes or garbage in a can which was at a point near the rear or end of defendant's building, was struck by glass falling out of defendant's kitchen window.

Although the complaint was based on some misconceived notion of the plaintiff's rights on the premises as a licensee or invitee, nevertheless, we are rather of the opinion that it was perhaps broad enough to embrace a cause of action on the theory that the plaintiff was where she had a right to be. The answer consisted of a denial of the plaintiff's allegations and a separate defense of contributory negligence. There was no defense interposed by the defendant that the plaintiff was a trespasser. At all events, there was no objection to or challenge of the pleadings. The trial was conducted on the specific issue, namely, where was the plaintiff at the time of the accident? Was she on the defendant's property or was she on the property of the owner in whose house she resided?

The testimony is not as clear as it should be. Frequent references to an alleyway, walls, property, ground, &c., are made without definitely and clearly establishing which is meant.

At the conclusion of the case a motion was made, on behalf of the defendant, for a direction. The trial judge, in dispos-

ing of the motion, first said: "I am going to leave it to the jury to determine as a matter of fact where the plaintiff was at the time she received these injuries when this glass fell * * *." Later and finally he told counsel for the respective parties that he had given further consideration to the motion to direct a verdict and asked counsel to direct his attention "to any testimony that would place the plaintiff either at the line of properties of the house where the plaintiff was a tenant and the property of the defendant or outside of that property line or more than three feet from the property line of the defendant." This counsel, apparently, failed to do. Whereupon the judge quoted the testimony developed on the cross-examination of the plaintiff, which was as follows: "*Q.* Would you say that the can and where you were standing alongside of it was about three feet or within three feet of the Novich [defendant] wall? Was it that close to the house? *A.* Possibly. *Q.* Well, in any event it wasn't more than three feet away from the wall? *A.* No, it wasn't more than three feet. *Q.* It might have been less than three feet, but it wasn't more than three feet from the wall? *A.* No, I don't think so." And he added: "Now that [testimony aforesaid] is not denied," and granted the motion.

Did the trial judge rule rightly? We think not.

Before we consider the merits of the case it may not be out of place to restate certain well settled principles of law by which such consideration is to be governed. That in passing upon a motion to nonsuit and for the direction of a verdict, the evidence will not be weighed. All the evidence which supports the claim of the party against whom the motion is made must be accepted as true, and he is entitled to the benefit of all legitimate inferences which may be drawn therefrom. Where fair-minded men might honestly differ as to the conclusion to be drawn from facts, whether controverted or uncontroverted, the question at issue should be submitted to the jury. *Lipschitz* v. *New York and New Jersey Produce Corp.,* 111 *N. J. L.* 392.

That in passing for a direction all of the testimony must be considered. The mere fact that a portion of the testimony

seems to sustain the contention of the moving party is not sufficient if there is other evidence to the contrary.

In the case of *Hayward* v. *North Jersey Street Railway Co.*, 74 *N. J. L.* 678, this court held (at *p.* 681) :

"Assuming for the purpose of this discussion, that this evidence was susceptible of the construction placed upon it by the plaintiff in error, and permitted no other legitimate inference, nevertheless, because such testimony thus construed was directly at variance with the testimony of the plaintiff below on her direct, and with the evidence of other witnesses called in her behalf, it could not avail the defendant upon its motion for either a nonsuit or for a direction of the verdict.

"The trial judge could not ignore the testimony of other witnesses for the plaintiff in favor of that given by her on cross-examination, nor pass upon conflicting claims to credibility. The motion was in effect a demurrer to so much of the whole testimony as was favorable to the plaintiff, admitting its verity in point of fact for the purpose of denying its sufficiency in point of law. *Kaufman* v. *Bush,* 40 *Vr.* 645."

In *Hughes* v. *Rankin Realty Co.,* 108 *N. J. L.* 485, this court in an opinion by Mr. Justice Minturn (at *p.* 487), held :

"* * * The defendant, however, points out that the statements of this witness on cross-examination are in conflict with his statements on his direct examination. In such case the rule is that when different parts of a witness' testimony are in direct conflict, it is for the jury to determine what parts thereof shall be believed. *Nichols* v. *Grunstein,* 105 *N. J. L.* 363."

Our study of the testimony on measurements and distances on the pivotal and determinative fact in issue (premises on which plaintiff was standing) satisfies us that it is based on approximations and conjectures; that there was ample testimony from which the legitimate inference could have been drawn by the jury that the plaintiff was not on defendant's premises and this is so notwithstanding the fact that the plaintiff herself gave contradictory testimony on this point.

The following questions and answers are illustrative:

"*Q.* Assuming that the front of the jury box is Novich's wall, could you walk between the ash can and the wall without touching either the wall or the ash can? *A.* I think I could. *Q.* Well, would it have been a pretty tight squeeze? *A.* I don't remember. I didn't look at it. *Naturally I didn't measure the distance* between the ash can and the wall." * * * "*Q.* Would you say that the can and where you were standing alongside of it was about three feet or within three feet of the Novich wall? Was it that close to the house? *A.* Possibly." And yet the plaintiff asserted more *positively* on her direct testimony: "I was putting garbage in the can *in my back yard* * * *." And again on cross-examination almost immediately after she testified as stated by the trial judge, she also testified as follows: "About halfway up that alleyway Mr. Novich's house cuts in and makes it wider to the end of the house." "*Q.* And it was within this space that you were standing when the glass fell? *A.* No, not in that narrow space. *I was in the back of the yard.. After I passed the alley—after I left the alley."*

Rachael Minut, a witness for the plaintiff, testified that the can was about three or four feet from the window.

Mabel Rossman, a witness for the plaintiff, testified that the can was under the kitchen window. "A short way from the house," and again: "*Q.* Your garbage cans were a few feet from his [defendant's] wall? *A. Well, that is where our yard is."*

Barney Novich (defendant) himself testified as follows: "*Q.* Where were the pieces of glass you saw? *A.* Right in the ash can and some out. *Q.* That part of the glass that was out of the ash can, where was it? *A.* Not far—just maybe a foot or two feet—some two feet and some a couple of inches. *Q. Some in the alleyway and some in the Repasky yard? A.* Yes."

The Repasky yard was the yard belonging to the house in which the plaintiff lived.

As already indicated, the defendant's alleyway was made of brick or stone and the other alleyway was made of gravel. It would appear to us that this difference is rather significant

on the point in issue. For Mabel Rossman, on cross-examination, testified as to the position of cans as follows: "*Q*. And they were all put on the red brick wall that was right next to the wall of Mr. Novich's house, weren't they? *A. There was dirt there where they were put.*"

We are clearly of the opinion that the trial judge was right in the first instance. A jury question was presented. It was error to direct a verdict.

Since the case may in all probability be retried we suggest that the court below permit a reframing of the pleadings so that they shall plainly set forth the issue to be tried.

Judgment is reversed.

*For affirmance*—KAYS, J. 1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, HETFIELD, DEAR, WELLS, DILL, JJ. 15.