# BERNARD M. OTTENHEIMER *vs.* HAROLD S. MOLOHAN.

*Driving Automobile—Injury to Child—Playing Near Road— Contributory Negligence—Questions for Jury.*

A measure of damage prayer, in an action by a child for personal injuries, that if the jury find from the evidence that the plaintiff is entitled to recover in this action, they shall award him such damages as will fairly compensate him for the injuries received by him resulting from the accident described in the evidence for the pain, both physical and mental, which he suffered in consequence thereof, was free from objection.

pp. 176, 183

Excessive speed in the running of an automobile may constitute negligence if it directly contributes to the accident.

p. 184

Excessive speed could be inferred by the jury from testimony that, although the brakes were in good order and were put on so hard that a loud "screeching" was heard, and were applied before or at the moment of the accident, the car was not stopped for a distance of one hundred to one hundred and twenty-five feet.

p. 184

It cannot be said as a matter of law that defendant was free from negligence in driving his automobile on the very edge of the road at a rapid rate of speed, past small children playing at the roadside, when there was nothing to prevent him from turning to the middle or farther side of the road, since the well-known habit of children, when playing, to become oblivious to such dangers, should have been a warning to him to slow down and turn as far away as practicable under the circumstances.

pp. 184, 185

Negligence is the failure to do what a person of ordinary prudence would have done under the circumstances of the situation, or doing what such a person under such circumstances would not have done.                    p. 185

In dealing with the question of contributory negligence there is a distinction between small children and adults.          p. 185

The act of a boy six and a half years old in inadvertently getting over the edge of a village road while playing along its side does not constitute contributory negligence as matter of law.

p. 186

The act relied on to establish as a matter of law the existence of contributory negligence must be distinct, prominent and decisive, and one about which ordinary minds would not differ, and where the nature and attributes of an act relied on to show negligence contributing to an injury can only be determined correctly by considering all the attending circumstances, it falls within the province of the jury to pass upon it.          p. 186

*Decided June 20th, 1924.*

Appeal from the Superior Court of Baltimore City (CARROLL T. BOND, J.).

Action by Harold S. Molohan, by his father and next friend, M. C. Molohan, against Bernard M. Ottenheimer. From a judgment for plaintiff, defendant appeals. Affirmed.

The plaintiff's prayer was as follows:

If the jury find from the evidence that the plaintiff is entitled to recover in this action, they shall award him such

damages as will fairly compensate him for the injuries received by him resulting from the accident described in the evidence for the pain, both physical and mental, which he suffered in consequence thereof.

The defendant's prayers were as follows:

*First.*—The court instructs the jury that there is no evidence in this case legally sufficient to entitle the plaintiff to recover, and the verdict of the jury must therefore be for the defendant.

*Second.*—The court instructs the jury that it appears from the uncontradicted evidence in this case that the negligence on the part of the plaintiff directly contributed to the happening of the accident compalined of, and that therefore the verdict of the jury must be for the defendant.

*Third.*—The court instructs the jury that if they find from the evidence that the injuries complained of resulted from an unavoidable accident unmixed with negligence on the part of the defendant in charge of the automobile referred to in the evidence, then the verdict of the jury must be for the defendant, and by negligence is meant failure to exercise such reasonable care as a reasonably prudent person would have exercised under like circumstances.

*Fourth.*—The court instructs the jury that no evidence has been adduced in this case legally sufficient to enable the jury to find that the accident complained of in the declaration was directly caused by negligence or unskillfulness on the part of the defendant, and, therefore, their verdict should be for the defendant under the pleadings and evidence.

*Fifth.*—The jury are instructed that no evidence has been adduced in this case legally sufficient to enable the jury to find that the defendant's automobile was being operated at an excessive rate of speed at the time of the accident as alleged in the declaration and that, therefore, the verdict of the jury should be for the defendant under the pleadings and evidence in the case.

*Sixth.*—The jury are instructed that no evidence has been adduced in this case legally sufficient to enable them to find

that the plaintiff was using due and proper care and caution while walking alongside the road, as alleged in the declaration, it appears from the undisputed evidence in the case that he walked or stepped in front of said automobile without looking to ascertain whether any vehicles were approaching, the plaintiff was therefore guilty of negligence directly contributing to the accident complained of and therefore their verdict should be for the defendant upon the pleadings and evidence.

*Seventh.*—The court instructs the jury that the mere happening of the accident complained of raises no presumption of negligence on the part of the defendant operating the automobile complained of in the evidence, but the burden is upon the plaintiff to establish by a fair preponderance of affirmative evidence that negligence on the part of said defendant caused said accident, and if the minds of the jury are left in a state of even balance as to the existence of such negligence, then the verdict of the jury must be for the defendant.

*Eighth.*—The court instructs the jury that if they find from the evidence in the case that the plaintiff stepped or ran in the way of the automobile of the defendant when it could not be arrested in its course, and under circumstances where with ordinary care on the part of the driver the car could not be brought to a pause early enough to save the plaintiff from injury, the defendant is not liable, and the verdict of the jury must be for the defendant.

*Ninth.*—The court instructs the jury that if they find from the evidence that the plaintiff came from near or alongside of the macadam road and walked or ran into the automobile of defendant and that the driver of said automobile by the exercise of ordinary care could not have stopped the automobile in time to prevent the plaintiff from coming in contact with it after he saw, or, by the exercise of ordinary care, might have seen the plaintiff in a position of danger, then the verdict must be for the defendant.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*L. Wethered Barroll,* with whom was *William L. Marbury* on the brief, for the appellant.

*Joseph Addison,* with whom was *T. Howard Duckett* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

On August 9th, 1921, Harold S. Molohan, aged six and a half years, the infant plaintiff in this case, was struck by the automobile of Bernard M. Ottenheimer, the defendant, on the Washington-Baltimore State Road, near Cottage City, in Prince George's County, Maryland. Suit was brought by the infant, by his father and next friend, against Ottenheimer, and a verdict rendered by a jury in favor of plaintiff for $950, on which judgment was entered. This appeal is from that judgment.

The only bill of exception is to the ruling of the trial court on the prayers.

The road at the point of the accident is twenty feet wide, of which about sixteen feet is of asphalt or macadam, and two feet on each side, spoken of by witness as coping or shoulders, is concrete. So far as can be made out from the testimony, this so called coping is merely a widening of the road as originally built. On the right side of the road going towards Baltimore is a cinder drive-way in front of a gasoline station, located near the place where the child was struck. This drive-way was made by the owner of the station as a convenient means of approach to it, and is used by automobiles going in. It extends about seventy-five feet each way from the station towards Baltimore and Washington. The defendant testified that he, with a representative of his firm, Mr. Neville, was returning to Baltimore from Washington "riding leisurely along, and when we got to Cottage City, just before this accident occurred, there was a machine right in front of us which was about three or four lengths from my

machine, and as this machine passed I noticed a couple of boys out on the cinder path to the right of the road; I did not know whether they were playing catchers or tags, but, anyhow, this little boy happened to jump away from the other boy and immediately in front of my machine.

"Q. At the time the little boy jumped in front of your machine how far was he in front of you? Ans. Right immediately on top of me; my machine was going along and I just seen the boys playing, and the first thing I knew I struck him. Q. State how many feet directly in front of your machine? Ans. He was five or six feet away when I first seen him. Q. How fast were you going? Ans. You cannot go through Cottage City fast; moderate speed; about eighteen miles. Q. What part of the road was your machine on? Ans. I was to the right of the middle of the road, the right hand side, where you have to go. Q. It was stated by the plaintiff's counsel * * *. You were off the asphalt * * *. Were you on the shoulder or out on the cinders? Ans. No, sir. Q. What did you do as soon as the little boy darted in front of you? Ans. I did not know anything until I heard a thump, and Mr. Neville, who was with me, he said, 'Joe, you must have struck the boy?' I stopped as soon as I could get out of our machine, and Mr. Neville and I went back and seen the boy lying on the road, and he was unconscious," etc.

The witness further said he thought, when he went back, the boy's body "was lying on the concrete road; maybe his arm or his head or something might be on the cinders, but most part of him was lying on the cement road;" that witness travelled three or four lengths of the machine after he threw his brakes before he stopped. "Of course I did not expect to hit the child, so I was not prepared to stop immediately, but I stopped as soon as I could. Q. Were your brakes working properly? Ans. Yes, sir, I am very particular about my brakes, and I don't go without good brakes."

He further testified that at the time of the accident he had been driving five years; that he goes to Washington two or three times a week, generally over that same road.

On cross examination witness said, before he approached
Cottage City, he knew he was coming to a thickly settled com-
munity.   He explained that when he said he first saw the boy
when he was five or six feet in front of him he was referring
to the time of the accident; before that he saw the two boys
playing.   "They were out in the cinder path playing before
I got there, I don't know what, pulling and jerking with one
another and one boy darted away in front of the machine."
His estimate of the distance he went after the accident was
from forty to sixty feet, and of the distance the boys were
from him when he saw them playing, ten or fifteen feet.   "Q.
You could see they were young children five or six years of
age?   Ans. Yes, sir.   Q. Did you slow down because of the
danger of the child jumping in front of the machine?   Ans.
I do not expect children to run in front of my machine; they
were on the cinder path.   Q. How far on the cinder path
were they?   Ans. About four feet.   Q. When you saw the
boys did you slow down so that if one did jump in front of
you you could stop without striking them?   Ans.   I was
going my usual pace.   Q. What was your usual pace?   Ans.
About eighteen miles an hour.   Q. You are very particular
about your brakes and you kept them in first class order?
Ans. Yes, sir.   Q. Is it not a fact that anyone can stop a
car with good brakes in a whole lot less than forty to sixty
feet?   Ans. Yes, sir.   Q. Why did not you?   Ans. I was
surprised at hitting the bay, nervous at hitting the boy, and
I didn't stop right away.   Q. When you saw him jump in
front of you you did not do anything at all but you struck
him?   Ans. I was going slowly and the boy darted out in
front of me and it was impossible to avoid it.   Q. Did you
try to turn the machine out of the way?   Ans. I could not
do it; I could not do anything."

Joseph F. Neville testified that they were going along at
a very moderate rate of speed, a car was ahead of them and
there was no other traffic on the road; the two boys were on
the cinder path; witness was on the right side of the car
and saw the boys; "the little one darted out like a shot out of
a gun": witness jumped and said, "My God, you will hit

that boy." "Q. Where was the car at that time? Ans. Within five or six feet of the boy."

Witness further testified that the car was on the asphalt, "not on the shoulder at all, but in the road proper," that witness supposes the car went forty or fifty feet after it struck the boy; witness was so certain they were not on the concrete shoulder "because there was no machine, only one previous to us and nothing was in the way and there was no necessity of Mr. Ottenheimer driving that close and I know he is an exceptionally careful driver." The car in front of them was about thirty feet ahead; witness saw the children before the first car passed them; "One standing outside and the other standing in the cinder path." Q. What were they doing? Ans. I don't know; sky-larking or fooling like children will do. Q. Was it possible for Mr. Ottenheimer to see them? Ans. He could not see them clear as I did because he was on the other side and I was on this side; it was an open car. Q. The other machine was thirty feet ahead? Ans. Yes, sir. Q. After that machine passed Mr. Ottenheimer could see them? Ans. Yes; he would have a clear view then."

There was no witness for the plaintiff who saw the collision except the injured boy, who was not examined in regard to it.

Richard H. Mansfield, a detective sergeant of the Washington Police Department, heard "a loud screeching of brakes," and looking out his window saw the machine pulling up in front of his house; he looked up the road and saw the child lying on the road about one hundred to one hundred and twenty-five feet from the machine; witness asked Mr. Ottenheimer, on the way to the hospital, how the accident happened, and he said he didn't see the child. Ottenheimer denied that he made such a statement.

Mansfield further testified that the road from the place of the accident towards Washington is straight for the distance of an eighth of a mile; that the road at Cottage City was at the time of the accident very much built up; that the boys head was lying along the outer edge of the coping.

Richard A. Shreeve, Jr., testified that he owned the filling station in front of which the accident happened; that he was sitting in front of his place reading when he heard a lick back of him, and turning around saw the machine going down the road and the boy lying on the side of the road; that the machine stopped between one hundred and one hundred and twenty feet from the boy; that the "brakes were screeching awful loud"; that the boy was lying alongside of the road partly on the cinders, his head was on the shoulder or partly on the shoulder; that he saw the boy before the accident. "Q. Where was he when you saw him? Ans. Like this is the Baltimore Boulevard (indicating). I was sitting facing towards Bladensburg, and this child and some other child was going up the road, and a little while afterwards is when I heard the lick, and I turned around and saw the child lying back of me and the machine coming down. Q. What part of the road were they on? Ans. The right hand side, coming to Baltimore. Q. The main traveled road? Ans. When I first saw them? Q. Yes? Ans. They were on the wide part of the road, on the shoulder, going up the road. Q. You do not know whether the child was struck going up or coming back. Do you know how long about before the time of the accident that you saw the child? Can you calculate about what time it was? Ans. I do not know. I have kind of forgotten that now. I don't know exactly how long it was."

John R. Burton testified that he did not see the accident, but saw the boy lying on the road; that "he was laying at the edge of the coping; laying on the cinders right at the edge of the coping"; that he didn't know, but judged that Mr. Ottenheimer stopped about one hundred and thirty-five feet from the boy.

In his brief appellant says the only error complained of is the refusal of the court to take the case from the jury.

The only prayer granted at the request of plaintiff was the ordinary measure of damages prayer, which was free from objection, and the only prayers of defendant refused.

were those which sought to have the case withdrawn from the jury.

The Reporter is requested to set out all of defendant's prayers.

The first, second, fourth, fifth, and sixth prayers were properly refused.

The first is a general demurrer to the evidence; the fourth and fifth respectively ask for a directed verdict under the pleadings because of absence of evidence—(a) that the accident complained of in the declaration was directly caused by negligence or unskillfulness on the part of the defendant; (b) of excessive speed as alleged in the declaration.

Excessive speed could well have been inferred by the jury from the testimony that, although the brakes were in good order and were put on so hard that loud screeching was heard, and were applied before or at the moment of the collision, the car was not stopped for a distance of from one hundred to one hundred and thirty-five feet, and excessive speed alone may constitute negligence if it directly contributes to the accident. *Sullivan* v *Smith,* 123 Md. 554; *Taxicab Co.* v. *Emanuel,* 125 Md. 246.

Negligence could also be inferred from the position of the boy after the accident, as testified to by several witnesses, one of whom said his head was at the outer edge of the shoulder and the rest of his body on the cinder path, that at the time he was struck he was barely off the cinder path. The jury did not have to believe that plaintiff's witnesses were accurate in their testimony as to the position of the car on the road. Even according to defendant's testimony there would have been only a few feet between the car and the boy if the car had passed him while he was in the position on the cinder path where defendant says he first saw him, at which time he was "skylarking" or "pulling and jerking" with another little boy; and according to the testimony of defendant's companion, there was nothing to prevent defendant from seeing the boys for at least thirty feet. It cannot be said as a matter of law that defendant was free from negli-

gence in passing, on the very edge of the road at a rapid rate of speed, small children playing at the road side, when there was nothing to prevent him from turning to the middle or farther side of the road. The well known habit of children, when playing, to become oblivious to dangers of this character, should have been a warning to defendant to slow down and turn as far away as practicable under the circumstances. The signs on every public road warning automobilists to "go slow" upon approaching school houses recognize this characteristic of children. "Negligence is the failure to do what a person of ordinary prudence would have done under the circumstances of the situation, or doing what such a person, under such circumstances would not have done." *Geiselman* v. *Schmidt,* 106 Md. 580. If defendant's car had been under control he might have turned aside in time to avoid the accident when he realized the actual peril at a distance of five or six feet.

In order to reverse the ruling below on these prayers "we should have to determine that the evidence does not admit of any inference of negligence in the operation of the defendant's car," and this conclusion we are unable to reach. *Mears* v. *McElfish,* 139 Md. 81.

The second and sixth prayers ask for a directed verdict on the ground of contributory negligence. The distinction between small children and adults is well recognized in this State in dealing with contributory negligence. In *Balto. & O. R. R. Co.* v. *Fryer,* 30 Md. 47, it was said: "The deceased, it is true, was bound to use ordinary and reasonable care to avoid the consequences of defendant's negligence, as a condition upon which this action could be maintained; but these terms are relative and dependent, and whether such reasonable and proper care was used on the part of the deceased can only be determined by considering her age and capacity. Ordinary and reasonable care, under the circumstances, is that degree of care we might reasonably expect from one in the situation and condition of the deceased; and as she was a child of but five years of age, the degree of intelligence which she was capable of exerting for her rescue

from danger, we may suppose to be very small." See also *McMahon* v. *Northern Central Ry. Co.,* 39 Md. 438; *Balto. & O. R. R. Co.* v. *Griffin,* 141 Md. 520

"The act relied on to establish as a matter of law the existence of contributory negligence must be distinct, prominent and decisive, and one about which ordinary minds would not differ in declaring it to be negligent. Where the nature and attributes of an act relied on to show negligence contributing to an injury sustained can only be determined correctly by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the court to determine its quality as matter of law." *Cooke* v. *Traction Co.,* 80 Md. 558; *Balto. & O. R. R. Co.* v. *Hendricks,* 104 Md. 84; *Taxicab Co.* v. *Emanuel,* 125 Md. 246; *Washington & Rockville Ry. Co.* v. *Sullivan,* 136 Md. 202; *Mears* v. *McElfish,* 139 Md. 81; *Brown* v. *Patterson,* 141 Md. 293.

We are unable to say that the act of a boy six and a half years old inadvertently getting over the edge of a village road while playing along its side comes within the above definition.

In the cases of *Havermale* v. *Houck,* 122 Md. 82, and *Sullivan* v. *Smith,* 123 Md. 546, relied on by defendant, the Court held that there was no evidence tending to show negligence on the part of defendant either as to excessive speed or otherwise. In each of these cases the plaintiff deliberately attempted to cross a city street in front of an automobile. There was no such attempt here. These prayers were properly refused.

The variance now suggested by defendant, if there was in fact a variance, was not specifically suggested by any of the prayers and cannot be considered here.

The granted prayers of defendant gave him at least as much as he was entitled to. It is not necessary, however, and we do not pass on those prayers.

*Judgment affirmed, with costs to appellee.*