HERBERT M. JONES *v.* JOHN T. WAYMAN
[No. 99, October Term, 1935.]

*Decided January 16th, 1936.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, MITCHELL, and JOHNSON, JJ.

*John H. Hessey,* with whom were *T. Hughlett Henry* and *Musgrave, Bowling & Hessey,* on the brief, for the appellant.

*James E. Ingram, Jr.,* for the appellee.

MITCHELL, J., delivered the opinion of the Court.

The single exception in the record on this appeal relates to the action of the lower court in rejecting the A, B, and fifth prayers of the appellant (defendant below) ; the first of said prayers being a general demurrer to the evidence, and the last-mentioned prayers being predicated upon the theory of contributory negligence.

John T. Wayman, the plaintiff, who was fifty years of age at the time of the injury complained of, was walking on a state highway leading from Claiborne to St. Michaels in Talbot County, on Sunday, September 17th, 1933, at about two o'clock a. m., when he was struck by a Chevrolet coupé owned and driven at the time by the defendant, Herbert M. Jones. There were no witnesses to the accident causing the injury, other than the plaintiff and defendant, and Rebecca Bartlett Price, a passenger in the defendant's car.

The plaintiff testified that around five o'clock on the previous evening, in company with his nephew, he visited the town of St. Michael's, where he procured one pint of whisky, treated four of his friends from its contents, took two drinks himself, and threw the balance away. About nine o'clock on the same evening he had two or three drinks of beer; and after eleven o'clock he got in a friend's car and went to a place called Fisherman's Inn, which was located near a canning house at McDaniel Station. He did not drink anything at Fisherman's Inn, and later started to walk towards his home. When he reached a point in front of the canning house, he saw two automobiles parked on the road. He was asked

by one of the occupants of the cars for a match, told his inquirer that he did not have one, and proceeded to walk with the traffic along the shoulder of the road forty or fifty feet. He then testified as follows: "The first thing something flew over the top of me. I never seen no lights or nothing. I looked up and there was a car. There wasn't a word said. I could see the faces in the car. Nobody said nothing to me, so I walked off. After I walked off a little ways the car drove off. They ran over me. I wasn't in the center of the road. I was on the right hand side, off on the dirt. The car ran off the road three feet and struck me." A short time afterwards the plaintiff hailed a passing car driven by Arthur L. Blake, who was accompanied by Dorothy A. Blake, his wife, and another passenger. Mr. and Mrs. Blake took the plaintiff immediately to the home of a neighboring physician, Dr. J. H. Hope, who administered first aid and advised that the patient be taken to a hospital. The doctor testified that the plaintiff appeared to be very drunk, but that he had also been very badly injured. He, however, qualified the statement as to drunkenness, to the extent that he could not say how drunk the patient was, but that he certainly had been drinking; that he was bleeding badly; his teeth were knocked out; and that it was possible for a man in that condition to be dazed. Mrs. Blake testified that Mr. Wayman was drunk; and her husband testified that "he had a strong smell of drink."

Harry G. Sewell testified that he saw the plaintiff around twelve o'clock on the night of the accident, at which time he appeared to have had a drink or two, but walked and talked all right, and did not seem to be drunk. To the same effect Camper Newman testified, stating that he saw the plaintiff at about 12:05 a. m. on the night of the accident. Samuel G. Carroll, then sheriff of Talbot County, testified that he saw Mr. Wayman at about 12:05 o'clock, and that he was not drunk, but walked and talked straight. Similar testimony was also adduced from Roman Le Compte, an officer of the town of St. Michaels, who stated that he was with Sheriff Carroll, saw the

plaintiff around twelve o'clock, and that he walked and talked all right. All four of the next above witnesses saw the plaintiff at Fisherman's Inn, and it is testified by the plaintiff that he did not drink anything at the latter place, or at any time after leaving St. Michaels.

Miss Price, the passenger in the defendant's car at the time of the accident, testified that the accident occurred around two o'clock a. m. on the 17th of September, 1933, when, in company with the defendant, she was returning from a roadside house known as "Conway's"; that it had been very stormy during the night, but was clear when the collision took place; that the defendant was sober, and was driving upon the Claiborne-St. Michaels high-way, in the direction of St. Michaels, when she noticed a car parked on the opposite side of the road, headed in the direction of Claiborne, and a man standing upon the road engaged in conversation with an occupant of the car; that as the car driven by the defendant reached a point twenty-five or thirty feet distant from a point opposite the front of the parked car, the man "staggered back" in front of the defendant's car; and that he wore a white shirt and white trousers, and she could plainly see him at the instant he was struck. She further testified that the defendant swerved to his right and put on his brakes; that she saw the plaintiff thrown up in the air, and she recognized his face. She then became unconscious, and did not recover from the shock until she was near her home at Newcomb, to which destination the defendant was then driving.

Herbert M. Jones, the defendant, testified that he had three drinks of liquor between seven and eleven o'clock on the evening before the accident; that he visited Conway's between eleven and twelve o'clock, where he drank a highball. He left Conway's around one o'clock a. m., stopped at another place for fifteen or twenty minutes, and proceeded on his journey to take Miss Price to her home at Newcomb. He reached the state highway at McDaniel Station, and the accident occurred between the station and the canning house. According to this witness,

the highway at the point at which the accident happened is perfectly straight and so continues for one-half to three-quarters of a mile; the road is fifteen feet wide, with a three-foot shoulder. He was driving at a speed of from thirty to thirty-five miles an hour, when he noted a parked car headed in the opposite direction from which he was traveling. His testimony as to how the accident happened is similar, in detail, to that of Miss Price. In direct conflict with the testimony of the plaintiff, he asserts that the plaintiff did not get up after the accident and look in the car, nor did he walk away while the defendant was on the scene. He examined the plaintiff, who rolled off the fender of the car to the edge of a ditch, and concluding that he was not seriously injured, decided to take his guest to her home, and return to the scene of the accident later. This he did, but when he returned the plaintiff had disappeared.

As is usual in such cases, the testimony of the contending parties is conflicting; and especially do we find a conspicuous lack of harmony as to all vital issues involved in the instant case. Under such circumstances, therefore, we are of the opinion that the ruling of the court below upon the defendant's A and B prayers was correct. The former prayer is to the effect that there is no evidence in the case legally sufficient to entitle the plaintiff to recover; and the latter is to the effect that the evidence is not legally sufficient to show that the injury was caused solely by the negligence of the defendant. There being manifest conflict found in the evidence as to facts upon which the theory of both prayers is predicated, it follows that these questions were for the jury alone to determine. *Philadelphia, B. & W. R. Co. v. McGugan,* 102 Md. 270, 62 A. 752. This court has too often decided that a prayer asking the trial court to say that there is no evidence of a particular fact is erroneous, if there is some evidence of such fact, even though slight, to admit of logical contention to the contrary. The question of contributory negligence, to which the B prayer is directed, it may be added, has been dealt with by this court in

numerous cases, and is now well settled. In this connection, we need only refer to the recent case of *Merrifield v. C. Hoffberger Co.*, 147 Md. 134, 127 A. 500, 501, and the cases to which reference is therein made, wherein it is stated: "The law, as declared by this court and supported by the great weight of authority elsewhere, is that, to justify the trial court in withdrawing the case from the consideration of the jury on the ground of contributory negligence by the plaintiff, the evidence must show some prominent and decisive negligent act on the part of the plaintiff which directly contributed to the accident, and was the proximate cause thereof, and that this negligent act must be of so prominent and decisive a character as to leave no room for difference of opinion thereon by reasonable minds. *Balto. & O. R. Co. v. State, Use of Hendricks*, 104 Md. 76, 84, 64 A. 304; *Cooke v. Balto. Traction Co.*, 80 Md. 551, 558, 31 A. 327; *Taxicab Co. v. Emanuel*, 125 Md. 246, 93 A. 807. In the case last cited, at page 259, 93 A. 813, we said: 'The act relied on to establish as a matter of law the existence of contributory negligence must be distinct, prominent and decisive, and one about which ordinary minds would not differ in declaring it to be negligent. Where the nature and attributes of an act, relied on to show negligence contributing to an injury sustained, can only be determined correctly by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the court to determine its quality as matter of law'."

The case being submitted to the jury, prayers dealing with the law applicable to the facts therein were granted at the instance of the respective parties. One of these prayers was offered by the plaintiff, a standard measure of damages instruction. Four others were prepared by the defendant, covering primary, contributory and concurrent negligence, and burden of proof.

The defendant complains of the rejection of a fifth prayer, which would have told the jury: "That if they

shall believe from the evidence in this case that the automobile of the defendant was proceeding from McDaniel toward Newcomb on the public highway, and the plaintiff stepped or walked into the path or side of the said automobile at a time when it could not be arrested in its course and under circumstances where, with ordinary care on the part of the driver thereof, the said automobile could not be brought to a pause early enough to save the said plaintiff from injury, if the jury so find, then the defendant is not liable and the verdict of the jury must be for the defendant." Objection is made that the prayer, while indicating what could or could not be done by the driver of the car after the appearance of danger, fails to mention the speed of the car or the condition of its lights before the advent of danger, and, being lacking in these details, would have tended to mislead the jury. If the prayer had recited facts as to speed and lights, it would have repeated only what the jury already knew, from the testimony. There was no affirmative evidence of excessive speed. The defendant testified he was traveling at a moderate rate. The plaintiff says that at the moment of impact "something flew over him." As to the condition of lights on the car, any evidence of their weakness is slight and inconclusive. In support of the prayer, it is argued that while the jury were told in general terms, by concurrent instructions, that the plaintiff could not recover if he had been negligent, which negligence contributed to his injury, yet they were not told that the act of stepping or walking into the path or side of a moving car would constitute negligence.

The court ruled upon the prayer as presented to it. In such form, silent as to speed or lights, this prayer laid down the proposition that one could not recover who walked into the side of a moving vehicle, nor could he recover if he stepped in its path under circumstances precluding an ordinarily careful driver from avoiding a collision. The law of a case is given to the jury in the light of the evidence which they have just heard, and it is not incumbent on the draftsman of a legal instruction

to incorporate therein every detail or circumstance brought out in the testimony upon a given point. The jury, presumptively composed of men of at least average intelligence (if not in greater degree, because of the method of their selection), should be credited with ability to apply the law, given them in plain terms, to the facts freshly received by them, with reason and common sense.

Prayers similar to, if not identical with, the one in question, are found in several cases that have come before this court; but in each case the prayer was granted below and the judgment was affirmed. *Epstein v. Ruppert,* 129 Md. 432, 99 A. 685; *Ottenheimer v. Molohan,* 146 Md. 175, 126 A. 97, 101; *Harrison v. Smith,* 167 Md. 1, 172 A. 273; *Sullivan v. Smith,* 123 Md. 546, 91 A. 456. In the *Epstein* case, the defendant appealed; and this court held that certain rejected prayers were covered by the granted prayers, among which latter was one of this type. In the *Ottenheimer* case, also, the defendant appealed; and we held that the granted prayers, including this prayer gave the defendant "at least as much as he was entitled to," but refrained from passing on them. In the *Harrison* case, likewise, the defendant appealed; and it was held that the rejection of an "unavoidable accident" prayer was not prejudicial, because the defendant's theory was submitted to the jury in another prayer, similar to the one under discussion. In the *Sullivan* case, the plaintiff appealed, claiming the granting of an identical prayer was erroneous; and we said that while such a prayer might be misleading in some cases, it was not objectionable in that case.

It will be seen that nowhere has this court put the stamp of approval upon this form of prayer. In the cases cited, the first three were appeals by defendants, in whose behalf such a prayer had been granted; and obviously this court was not called upon to declare such granting erroneous. The mere fact of affirmance of a judgment below does not imply approval of all prayers granted on behalf of one side or the other. The appellate court

may find unsound legal principles contained in the granted prayers of the losing' party, yet sustain the finding below; or it may conclude that certain instructions given the jury at the instance of the unsuccessful party are incorrect, yet refuse to disturb the result, for the reason that the error does not amount to a reversible one.

When the reviewing court permits a judgment to stand, based in part upon a particular prayer, it does not follow that had such prayer been rejected and the judgment been otherwise, it would have reversed the same because of such rejection. Therefore, the fact that a certain prayer is copied *verbatim* from a case in which it was successfully offered by the party subsequently victorious in the higher court is not always a criterion for its propriety in a future case.

A litigant may not complain of the refusal of a proffered instruction on the law, if the same proposition is sufficiently contained in other prayers, submitted to the jury on behalf of either himself or his opponent. In the case before us, the question of contributory negligence was clearly left to the jury in the granted prayers of the appellant; and there was no reversible error in the rejection of his fifth prayer.

*Judgment affirmed, with costs to the appellee.*