# WILLIAM E. BOZMAN *v.* STATE, USE OF MYRON A. CRONHARDT.

[No. 18, October Term, 1939.]

152

*Decided November 1st, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Walter V. Harrison,* for the appellant.

*Daniel S. Sullivan,* with whom was *Irvin S. Friedman* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This appeal is from a judgment for the plaintiff on the verdict of a jury in the Superior Court of Baltimore City in a suit brought by the State of Maryland, to the use of Myron A. Cronhardt, to recover damages for the death of his infant son, who was killed by an automobile driven by William E. Bozman, the appellant.

The accident occurred on May 30th, 1938, in broad daylight of a clear afternoon, on Green Spring Avenue in Baltimore County. This highway runs north and south, with a concrete surface fifteen feet in width. The automobile was traveling north in a 45-mile speed district, and there was no other traffic at the time. The child, not quite eight years old, lived on the west side of the road, but was struck on the opposite side of the road in front of his grandmother's home.

The boy's sister, about ten years old, was an eye-witness of the collision. As she was standing in front of her home, she saw the automobile coming at about the

third telephone pole away, when her brother was getting on his bicycle in their grandmother's driveway. She saw him, astride the bicycle with his feet on the ground, looking up and down the road. The front wheel was at the edge of the concrete when the automobile was between the first and second telephone poles (between 168 and 289 feet away). She said that the automobile was going fast, and that no horn was blown. She screamed to her brother, but was unable to attract his attention. She saw the car hit him when his bicycle was entirely on the concrete.

According to witnesses who arrived on the scene, the automobile had swerved and landed near the bank on the west side of the road. The boy and his bicycle were lying a short distance beyond the automobile. Skid marks, starting fifteen feet south of the point of impact, extended diagonally across the road seventy-five feet to the rear wheels of the automobile.

The appellant testified that his machine was a 1938 Chevrolet coupe; that it had been used four months and was in perfect condition, and that its brakes had been tested two days before the accident. He swore that he was driving at a speed of between thirty-five and forty miles an hour when he first saw the child at a distance of about seventy-five feet. He said he jammed on the brakes immediately, pulled to the left, and had almost stopped when he struck the child near the center of the road.

The appellant contends that there was no evidence of negligence on his part, and therefore the trial court erred in refusing his prayer for a directed verdict. However, in order to justify such an instruction, the evidence must admit of no inference of negligence in the operation of the car. Excessive speed, which may constitute negligence if it contributes to an accident, may be inferred from such testimony as that the brakes were put on too late, or that the car did not stop until it had gone an extraordinary distance after the brakes were applied. The jury is not compelled to believe that the

witnesses for either side are accurate in their testimony regarding the speed or the manner of operation of a motor vehicle. *Ottenheimer v. Molohan,* 146 Md. 175, 126 A. 97. The skidding of an automobile after a collision is also a circumstance of evidential value in reference to the rate of speed or whether the machine was under control. Thus, in a case where a motorist traveling forty miles an hour saw a pedestrian in front of him, and applied his brakes, causing his machine to skid fifty feet, it was held that the testimony was legally sufficient to support a finding that the defendant was going at a dangerous and unlawful speed. *Ellis v. Sanberg,* 41 Cal. App. 506, 182 P. 792; 2 *Blashfield, Automobile Law,* sec. 11, page 1738. In view of the evidence as to skid marks extending across the road seventy-five feet, the admission of the appellant that he saw the boy at a distance of seventy-five feet, and other testimony in the case, a directed verdict on the ground of absence of negligence would have been improper.

The appellant also contends that there was contributory negligence, and for that additional reason the court erred in refusing a directed verdict. To justify the withdrawal of a case from the jury on the ground of contributory negligence, the evidence must show some act so decisively negligent as to leave no room for difference of opinion thereon by reasonable minds. *Jones v. Wayman,* 169 Md. 670, 182 A. 417. Moreover, a child of tender years is not held to the same measure and kind of care required of a reasonably prudent adult, but only to that degree of care which children of the same age would be expected to use under similar circumstances. Thus, a child four years of age cannot be guilty of contributory negligence under any circumstances. *Mahan v. State,* 172 Md. 373, 191 A. 575. In the case before us, the child was apparently unaware of danger and, according to the testimony, looked up and down the road, indicating thereby a certain degree of care. As he was less than eight years old, he could not have been held to the same care usually exercised by an older

person. The court properly refused an instruction of contributory negligence.

The appellant further complains that the court erred in refusing to instruct the jury that their verdict must be for the defendant if they found that the child entered the path of the car at a time when the defendant could not avoid the collision, or, in the words of the prayer, "under circumstances where, with ordinary care on the part of the defendant, the deceased's approach could not reasonably be anticipated and the automobile could not be brought to a stop or swerved away from its course in time to save the deceased from injury." Prayers of this nature are often inappropriate because of silence concerning the speed of the defendant. It is true there are cases where similar prayers have been granted in the past by the lower courts, and the judgments have not been disturbed; but the mere fact of the affirmance of a judgment does not always imply an approval of all the prayers granted for one side or the other. *Jones v. Wayman,* 169 Md. 670, 182 A. 417. The rejection of this prayer cannot form the basis of any grievance, as ample instructions were given to the jury in other prayers.

The appellant finally complains because the court refused to permit a police officer to testify regarding the stopping distances of automobiles. The officer had taken a special course in the subject. Evidence as to the distance within which a car could be stopped is admissible to aid in determining whether the speed at the time of an accident was negligent. And it is not necessary that the witness be an expert to qualify him to testify, if he has had practical experience with automobiles and can express an opinion on the distance within which a specified automobile, moving at a specified speed and under specified conditions, could be stopped. *Morris v. Montgomery,* 229 Mich. 509, 201 N. W. 496. But at the trial of the case at bar, when the officer was asked five questions about stopping distances, four of them failed to make any mention of the type of motor vehicle to be

considered. The only question which specified the make of car was: In the case of the operation of a 1938 Chevrolet coupe, four months old, on a concrete road at a speed of between thirty-five and forty miles an hour, what is the "maximum stopping distance without reaction"?. There was no point in asking the maximum stopping distance; it is the minimum which is important. This court cannot permit one side or the other to redraft a question that has been asked at the trial below, or to explain now what was intended by the question. Furthermore, the question should have stated the condition of the tires on the car, the grade of the road, the condition of the concrete surface of the road, and any other factors which might have been material to the conclusion. It is well settled in this state that a hypothetical question must embrace every material element of the hypothesis founded upon the evidence, and a hypothetical question omitting any vital or essential fact testified to is properly disallowed. *Northern Central Ry. Co. v. Green*, 112 Md. 487, 76 A. 90.

Since there is no reversible error in the trial of the case in the court below, the judgment must be affirmed.

*Judgment affirmed, with costs.*