GUY SHAPPELL AND ANNA SHAPPELL, PLAINTIFFS-RE-
SPONDENTS, v. APEX EXPRESS, INC., A CORPORATION
OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued February 2, 1944—Decided May 15, 1944.

For the appellant, *Bolte, Miller & Repello* (*Harry Miller,*
of counsel).

For the respondents, *Edward V. Martino.*

The opinion of the court was delivered by

PERSKIE, J.   The questions for decision are whether the
trial judge erred, as claimed, (1) in denying defendant's
motions for a nonsuit or for a directed verdict, and (2) in
his refusal to charge as requested.

This is a negligence case.   It arises out of a motor vehicle
collision which occurred in the early morning (between 6:15
and 6:30 o'clock) of October 17th, 1942, on the public high-
way (Route No. 40) at or near Elkton, Maryland.

Guy Shappell, the driver of the car, and Anna Shappell,
his wife, the owner of the car, sued defendant to recover the
damages which each allegedly suffered as a result of that
collision, laying the venue in Atlantic County where they

resided. The actionable negligence alleged was that defendant "unlawfully parked" its "truck" on the "public highway," in the "night time," without "warning lights," "blocking the highway," and thus creating a constant "danger and nuisance to the traveling public" more "particularly to the plaintiff" Guy Shappell; the defendant failed and neglected to "use due care to observe the traffic conditions," failed to post or give warning of the "creation, continuance or maintenance of such dangerous conditions," failed to discharge its duty to make the highway "reasonably safe" for plaintiff, a lawful user thereof; and that defendant (as alleged in the amendment to the complaint) failed to cause to be "continuously displayed on the highway the red or yellow burning danger or caution signal * * * in such manner as to prevent personal injuries * * *, and damages to property by collision." Motor Vehicle Laws of the State of Maryland, section 177, article 56, 194(3A), Acts of 1924, as amended.

Defendant denied that it was "guilty of any [actionable] negligence," it denied that it was guilty of any act of negligence which "solely and proximately" caused plaintiff's injuries, and defendant further pleaded that plaintiff was guilty of "contributory negligence," as a matter of law, and that his negligence (as the servant and agent of his wife) was attributable to his wife.

The case was tried and submitted to the jury upon the pleaded theory that the *lex loci* (Maryland) governed the substantive law (*Friedman* v. *Greenberg*, 110 *N. J. L.* 462, 466; 116 *Atl. Rep.* 119; 87 *A. L. R.* 849), and that the *lex fori* (New Jersey) governed the *quantum* of proof necessary to submit the case to the jury. *Ferguson* v. *Central Railroad Co.*, 71 *N. J. L.* 647, 651; 60 *Atl. Rep.* 382.

As so tried and submitted, the jury rendered a verdict of $1,500 in favor of Guy Shappell for his personal injuries and a verdict of $297.57 in favor of Anna Shappell, for the agreed amount of the damages to her car. From the judgment based upon these verdicts, defendant appeals.

We do not think that the trial judge erred either in denying defendant's motions for a nonsuit or for a directed verdict, or in refusing to charge as requested.

1. *As to negligence and contributory negligence.*

Defendant concedes that it was its common law duty to have exercised "reasonable care" to the end that its disabled vehicles "did not constitute a danger to other users of the highway," *American Express Co.* v. *Terry*, 126 *Md.* 254; 94 *Atl. Rep.* 1026; *Cf. Niles* v. *Phillips Express Co.*, 118 *N. J. L.* 455, 461; 193 *Atl. Rep.* 183; that the exercise of reasonable care required it to employ "reasonable measures" to give or post "reasonable warning of the presence of its disabled vehicles on the highway," and to remove its disabled vehicles from the highway as soon as it was reasonably possible for it to do so. These were also its statutory duties. Motor Vehicle Laws of Maryland (1939 ed.), article 56, section 194(3A), Acts of 1924, as amended (regulating the type of danger and caution signals to be displayed), and section 235 of the same article (providing for the removal of a disabled vehicle from the paved part of the highway as soon as reasonably possible).

Defendant stoutly argues here, as it did below, that it had fully discharged the duties which it owed to the plaintiff; that it was not guilty of any actionable negligence, that is negligence which was the proximate cause of the personal injuries or the property damage suffered by the respective parties; but that plaintiff was guilty of contributory negligence as a matter of law. But the jury found otherwise and not without proper proofs in support of its determination.

Generally stated, these proofs disclose that the driver of defendant's tractor to which was attached a trailer (also referred to as a truck) started from Perth Amboy, New Jersey, about 12:30 A. M., on October 17th, 1942, for Baltimore, Maryland. It had been "raining" and it turned out to be a "misty and foggy" night. En route, defendant's driver traveled in part over the public highway (Route No. 40) in Maryland. This is a dual public highway. It consists of two lanes for both south-bound and north-bound traffic. The two lanes (north and south-bound) are separated by a plot of grass. The entire width of the paved portion of the south lane is between twenty-two and twenty-four feet; and the width thereof is further extended by a ten-foot gravel shoul-

der. About 4:30 A. M., while defendant's truck was traveling on the right side of the paved portion of the south-bound lane, motor trouble developed. The driver heard a "sputtering sound" in the motor. He seemed to be "running out of gas." He tried to switch over the flow of gas from "the other" available "tank." But the flow did not take the "gasoline into the carburetor" and hence "there was no ignition to turn over the motor." Notwithstanding the fact that the motor was not running, the driver further continued to experiment by coasting along, hoping that by so doing the gas line would clear. It was not until he had so coasted for about "five hundred yards" that he became convinced that he would not be able to pick up the gas, "because there wasn't enough speed in the wheels to turn over the motor," that he tried to turn the tractor and trailer off the highway to the gravel portion thereof. He succeeded only in partially getting the front right wheels of the tractor off the concrete portion of the highway onto the gravel portion thereof where, as he says, in substance, because of a "heavy downpour of rain," the wheels sank a couple of inches. All of the trailer, except the right front wheel. which was on the gravel shoulder, was left parked on the paved part of the highway in a slanting position so that the rear left corner thereof was about two feet from the center (designated by a white line) of the paved highway, to the right. The result was that the right side of the south lane was blocked but admittedly there was sufficient space for a car to pass to the left of the trailer. The driver was unable to fix the motor trouble. He concluded to get the aid of the motor mechanic. Prior to his having done so, he turned off the lights on the trailer in order "to have enough juice for the battery." Then, according to his own testimony, he placed what he calls three pot flares, bomb type, on the highway in the following positions: one alongside the trailer, one slightly to the rear of the trailer and at or about the white line dividing the two lanes of the south-bound paved portion of the highway, and one about fifty feet to the rear of the trailer, toward the gravel side of the white line. These lights are concededly not in accordance with the prescribed statutory type. They

are otherwise described as "an oil lamp," "bomb type lamp." True, such lamps have a longer burning power than those of the statutory type but the flare of the latter casts a "much brighter light and would be visible for a greater distance." The lights used "throw a sort of a yellow light that flickers and it doesn't light a great area. It is not very bright in comparison with the intense flame and bright light you get from the flare" of the statutory type signal light. After placing these lights in the manner stated, defendant's driver went for the help of a mechanic.

In the meantime, plaintiff Guy Shappell was on his way, driving, by himself in his wife's car, to his place of employment at Port Deposit Navy Base Training Station in the State of Maryland. As plaintiff was driving he would pass through an occasional pocket of fog or mist. The head lights of his car threw a "beam of about 250 feet." His "brakes were working." He traveled at the rate of speed of "thirty miles an hour." At that rate of speed he could stop his car in "forty-three or forty-four feet." So he was driving through the fog or mist for about "twenty" or "thirty feet" when he reached a point on the highway when (between 6:15 and 6:30 A. M.), he collided with defendant's trailer which blocked the right side of the paved highway on which he was driving. In the words of the plaintiff, "I looked at my register going on the road and driving carefully, and out of a blue sky I was under the truck and didn't know nothing." When asked if he had observed any "warning signs or flares," he answered, "I didn't see a light or a warning at all." He was asked whether it was "clear in the vicinity of the accident just prior to the time it occurred?" He answered that it was "clear" about a "mile away," that is a mile further southward from the "point of the accident." And when again asked whether it was clear, he answered, "my lights allowed me to drive."

And there was proof by fellow workers, who traveled in another car which closely followed plaintiff's car and who were at the scene of the accident promptly after it happened, that the lights were not placed on the highway in the manner described by defendant's driver. Their testimony, in sub-

stance, was that the third light was also placed at or near the white line dividing the two south-bound lanes. In other words, there was nothing in the way of lights to act as a framework for the trailer or the portion of the highway occupied by it.

Under these circumstances, it was clearly open to the jury to find that the defendant was guilty of actionable negligence, that is negligence which was the proximate cause of the personal injury and property damages suffered by the respective plaintiff by reason of one or more of the following circumstances; (a) that defendant coasted along for a distance of "five hundred yards" experimenting with a "dead motor" before he steered off the concrete portion of the highway, (b) that defendant turned off all the lights on the trailer, and (c) whether defendant did, in light of all the circumstances, place the lights on the highway in a reasonably prudent manner.

Was plaintiff guilty of contributory negligence as a matter of law? Was he traveling too fast when he struck the fog or mist just prior to the accident? Did he make the proper observations? Why could he see a mile beyond the point of the accident and not see the trailer? Did he, under all the circumstances, act as a reasonably prudent person would have acted in like circumstances? Did he tell the truth when he said that he looked but did not see either the trailer or the lights? It seems to us that the answers to these questions can be made correctly only after a careful consideration of all "attending and surrounding circumstances" in the case and hence are jury questions. *Holler* v. *Lowery,* 175 *Md.* 149; 200 *Atl. Rep.* 353. The same principle is applicable in answering the question whether the driver should have seen the obstruction. *Robert* v. *Wells,* 170 *Md.* 367; 184 *Atl. Rep.* 923. True plaintiff was obliged to act with due regard to the weather conditions and also all other circumstances (*Cf. Peoples Drug Store* v. *Windham,* 178 *Md.* 172; 12 *Atl. Rep.* (2d) 532, 538), but it is also true that for the trial judge to have ruled that plaintiff was guilty of contributory negligence as a matter of law, defendant was obliged properly to prove that plaintiff's alleged negligence contributed to

and was the proximate cause of his injuries. The negligence alleged must be of such a prominent and decisive character as to leave no room for a difference of opinion thereof by reasonable minds. Otherwise it is a jury question. *Jones* v. *Wayman,* 169 *Md.* 670; 182 *Atl. Rep.* 417; *Hoffman* v. *Potomac Edison Co.,* 166 *Md.* 138; 170 *Atl. Rep.* 568. In our state, negligence and contributory negligence are pre-eminently questions of fact for the jury. *Cf. Thomas* v. *Metzendorf,* 101 *N. J. L.* 346; 128 *Atl. Rep.* 162; *Landra* v. *Marone,* 105 *N. J. L.* 405; 144 *Atl. Rep.* 565; *Kovacs* v. *Ford,* 108 *N. J. L.* 379; 158 *Atl. Rep.* 473; *Branigan* v. *Demarest,* 109 *N. J. L.* 123; 169 *Atl. Rep.* 319; *Stern* v. *Stulz-Sickles Co.,* 109 *N. J. L.* 415; 162 *Atl. Rep.* 571; *McConachy* v. *Skalerew,* 113 *N. J. L.* 17; 171 *Atl. Rep.* 817. In *Dobrow* v. *Hertz,* 125 *N. J. L.* 347, 348; 15 *Atl. Rep.* (2d) 749, we held that "* * * In passing upon a motion to direct a verdict, just as in passing upon a motion for a nonsuit, the evidence will not be weighed. The party against whom the motion is made is entitled to have all the evidence in his favor and all the legitimate inferences to be drawn therefrom treated as true. When fair minded men may honestly differ, as to the conclusion to be reached from that evidence, controverted or uncontroverted, the case must be submitted to the jury. *Repasky* v. *Novich,* 113 *N. J. L.* 126; 172 *Atl. Rep.* 374: *Christine* v. *Mutual Grocery Co.,* 119 *N. J. L.* 149, 151, 152; 194 *Atl. Rep.* 625. A verdict may be directed in favor of one party only when the evidence, together with the legitimate inferences to be drawn therefrom is such that no view which the jury might lawfully take of it favorable to the other party would be sustained. *Sardino* v. *Agnellino,* 119 *N. J. L.* 7; 194 *Atl. Rep.* 137.

2. Thus, as to the *quantum* of proof, we think that this case falls into the "ordinary run of highway collision cases" in which, as pointed out by Mr. Justice Parker, we have many times said that the "disposition of these questions of primary and contributory negligence is, as a rule, pre-eminently for the jury." *Dickerson* v. *Mutual Grocery Co.,* 100 *N. J. L.* 118, 119; 124 *Atl. Rep.* 785 (rainy, foggy night, headlights failed to penetrate the fog and defendant

first saw the car when he was seven feet away from it); *Osbun* v. *DeYoung* (*Court of Errors and Appeals*), 99 *N. J. L.* 204; 122 *Atl. Rep.* 809 (stormy, rainy, foggy, drizzling rain, rear end collision with plaintiff's standing car which, as claimed, had no tail light); *Seibert* v. *Goldstein Co.* (*Court of Errors and Appeals*), 99 *N. J. L.* 200; 122 *Atl. Rep.* 821 (violent snow storm, rear end collision, plaintiff following truck, recovered against owner of stalled truck); *McCartney* v. *British-American Metals Co.*, 99 *N. J. L.* 375; 124 *Atl. Rep.* 114 (evidently, absence of tail light).

3. We have carefully considered the several requests to charge which were refused by the trial judge. We find no reversible error. The charge was comprehensive, clear, fair and correct. We merely pause long enough to observe that while Maryland concededly recognizes the "last clear chance" doctrine (*State* v. *Glen Echo Park Co.*, 137 *Md.* 529; 113 *Atl. Rep.* 85), the proofs did not invoke it.

4. There is not an iota of proof that plaintiff was using his wife's car as her agent or servant. He was using the car for his own personal convenience.

The judgment is affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, RAFFERTY, HAGUE, DILL, JJ. 13.

*For reversal*—THE CHANCELLOR, COLIE, JJ. 2.