MILLER ET AL. *v.* GRAFF ET AL.

[No. 57, October Term, 1950.]

612

*Decided January 10, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Daniel B. Chambers, Jr.* and *Malcolm J. Coan,* with whom was *Francis T. Peach* on the brief, for the appellants.

*John Grason Turnbull,* with whom was *Walter B. Siwinski* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This record contains two cases, which arose out of an accident wherein Leola Miller, age 4, was knocked down and injured by a taxicab in Dundalk on February 17, 1948. The accident happened on Dunmanway about 4:30 p.m., when the little girl, who had been to the nursery school at Dunmanway and Liberty Parkway, was walking home with her mother. When she was about 125 feet east of Liberty Parkway, she ran from the south sidewalk of Dunmanway into the street and was knocked down on the north side of the street by a westbound taxicab owned by Theodore Graff and operated by his employee, Harold Leroy Hall. In the first case the child claims damages for personal injuries sustained as the result of alleged negligence of the owner of the taxicab and his driver. Her declaration was filed for her by her father, Lee Miller, her next friend. In the second case her father claims medical and hospital expenses and other consequential damages. The cases were tried together before a jury.

Officer Gustav Zucker, the first witness for plaintiffs, testified that he received a call to come to the scene of the accident at 4:35 p.m. When he arrived shortly afterwards, the taxicab was not there, the driver having taken the child and her mother to a hospital in Baltimore; but he was told by a resident of the neighborhood where the collision occurred. There, about 125 feet east of Liberty Parkway, he found skid marks about seven or eight feet from the north curb. He also saw blood spots along the side of the skid marks. These spots were about seven feet from the north curb. He was asked by the judge whether there was any way to

tell what car had made the skid marks. He replied: "No, sir, I could not tell." In view of that reply, the judge ordered the testimony as to the skid marks stricken out. He gave as his reason for the ruling that they had not been sufficiently identified to show that they had been made by the taxicab.

It is an accepted rule of evidence that a witness can testify as to tire marks made by a motor vehicle on a roadway where he had an opportunity to observe them before any change in them had taken place. The testimony of a witness as to tire marks should not be admitted unless it can be reasonable inferred from the time of the observation, or from the relative locations of the marks and the car, or from other convincing facts, that the marks had actually been made by the car. *Williams v. Graff*, 194 Md. 516, 71 A. 2d 450. In the case at bar the taxicab had been driven away from the scene of the accident before the investigating officer arrived. The testimony of a witness as to tire marks is not rendered inadmissible by the fact that the automobile which had made them had been moved before the witness arrived. In view of the fact that the witness arrived shortly after the accident and saw the skid marks where it happened, and also in view of the close proximity of blood spots to the skid marks, indicating where the child had been wounded, there is reasonable ground for the inference that the skid marks had been made by the taxicab. We, therefore, find that the officer's testimony was admissible.

The child's mother gave the following account of the accident: "Leola was running ahead of me a little ways and she just turned and started across the street, so I started screaming at her to come back. I had seen the cab coming. * * * Well, she got almost to the other side of the street and I kept calling to her to come back, come back, and she turned around and had started to come back, and he applied his brakes when he hit her, * * * and she had her hand up like this, and the bumper on the front caught her and threw her up in the air, and

she kept spinning around in the air, and she landed about the middle of the car."

George F. Burke, an employee of Bethlehem Steel Company at Sparrows Point, who was the only disinterested eyewitness, testified that as he was walking across Liberty Parkway, he saw the child in the street and the oncoming car. Seeing the child's peril, he threw his hand up to warn the driver to stop. The driver put on his brakes, but was unable to avert the accident.

The trial judge said that the testimony did not give rise to any right of action, and accordingly directed a verdict in each case in favor of defendants. Plaintiffs have appealed here from the judgments entered thereon.

The main question on this appeal is whether the evidence was legally sufficient to warrant submission of the cases to the jury. The duty which a motorist owes to pedestrians is ordinary care and caution in such amount as the particular situation demands. *Havermale v. Houck,* 122 Md. 82, 89, 89 A. 314. It is contended that the taxicab was being driven in the westbound lane, and that no negligence can be inferred from excessive speed, since the accident did not happen in a street intersection. While it is generally true that a motorist must exercise greater vigilance when approaching a street intersection than when driving between intersections, yet even between intersections a motorist must keep a lookout for any children who may suddenly come out into the street in front of him. As we said in *Heffner v. Admiral Taxi Service,* 196 Md. 465, 77 A. 2d 127, the public highways are for the use of everybody, and no one is barred from their use by age or physical condition. If a child darts out in front of an approaching automobile when the driver is going at a reasonable rate of speed and obeying the rules of the road, so that even with the exercise of due diligence he is unable to avoid running into the child, he is not liable for any injuries the child may sustain; but if the driver is going at an excessive speed, he cannot escape liability by saying that the child ran in front of the car so suddenly that the accident was

unavoidable. *Henkelmann v. Metropolitan Life Insurance Co.*, 180 Md. 591, 596, 26 A. 2d 418.

Motorists should bear in mind that young children lack judgment and caution, and that in crossing a street they are often reckless by adult standards. Such carelessness of children should serve as a warning to motorists to reduce their speed and to use caution whenever they see children in the street. Municipal and State officials have erected signs at many places on streets and roads to warn motorists to drive slowly in the vicinity of schoolhouses. The block in which the accident in this case occurred is residential. The maximum speed limit is 25 miles per hour. The Dundalk Elementary School and the Dundalk High School are only two blocks away. On the north side of Dunmanway, only a short distance west of Liberty Parkway, is a sign marked "Slow, School", while on the south side is a sign marked "No Parking".

Burke, the eyewitness of the accident, testified that the taxicab was traveling at a speed of about 45 miles per hour, or almost twice as fast as the law allows. It is an accepted rule of evidence that any witness qualified by observation and experience may testify as to the speed of a moving automobile which he has observed. In *State, for Use of Henderson, v. United Railways & Electric Co.*, 139 Md. 306, 309, 115 A. 109, this Court said that a witness should not be permitted to estimate the rate of speed of an automobile in miles per hour without first showing some special knowledge which enables him to speak as an expert. But by "expert" we do not mean only a person who has specially trained himself to estimate the speed of automobiles, but rather any person who has become familiar with the operation and speed of automobiles by personal experience. As Judge Offutt explained in *People's Drug Stores v. Windham*, 178 Md. 172, 182, 12 A. 2d 532, a motorist, in order to comply with traffic regulations, must constantly notice the speed of his own car as well as the speed of other cars in miles per hour, and thus he gains experience which should qualify him

to estimate the speed of an automobile which he has observed. In this case, however, proof of excessive speed is not confined to the naked estimate of speed in miles per hour. It includes also the testimony as to the skid marks of the taxicab and other evidence.

It is true that excessive speed of an automobile may not of itself be the proximate cause of an accident, but in some circumstances it may constitute negligence, if it directly contributes to the accident. *Ottenheimer v. Molohan*, 146 Md. 175, 184, 126 A. 97; *Sun Cab Co. v. Faulkner*, 163 Md. 477, 163 A. 194; *United States Fidelity & Guaranty Co. v. Continental Baking Co.*, 172 Md. 24, 27, 190 A. 768; *Bozman v. State, for Use of Cronhardt*, 177 Md. 151, 154, 9 A. 2d 60. Moreover, it is a criminal offense for any person to operate a motor vehicle over any public highway of the State recklessly or at a rate of speed greater than is reasonable and proper, having regard to the width, traffic and use of the highway, or so as to endanger the property and life or limb of any person. Code Supp. 1947, art. 66½, § 156.

Defendants, in endeavoring to show that the child darted in front of the taxicab when it was so close that the driver could not avoid the accident, placed their main reliance upon Burke's answer that the taxicab was "about 30 feet, maybe better than that" from the child when she started across the street. We cannot place much reliance upon this vague and indefinite answer. In the first place, the pedestrian was some distance away at the intersection of Liberty Parkway when the child wandered into the street. In the second place, the child entered the street from the south sidewalk and was struck in the westbound traffic lane only a few feet from the north curb. In the third place, the police officer testified that one of the blood spots, which evidently indicated where the child was struck, was about 55 feet from one end of the skid marks. This case is not one where a person suddenly leaves a sidewalk or other place of safety and darts directly into the path of a car. The child proceeded across the street in plain view of the

driver, and the question is whether he could have avoided the accident if he had been driving at not more than 25 miles per hour, as the law allows.

At the time of the accident there were no cars parked in the block on either side of the street. The block was approximately 300 feet in length. The driver had an unobstructed view of the street from one end of the block to the other. Visibility was good; it was daylight, and the weather was clear. But the driver was going so fast that the little girl was hurled into the air, and when the taxicab came to a stop her head was underneath the rear end of the cab. Burke testified that the taxicab skidded about eighteen feet before it struck the child, and about six feet afterwards. The skidding of an automobile at the time of a collision is a circumstance of evidential value in determining whether it was going at an excessive speed and whether the car was under proper control. In the present case the testimony of a pedestrian indicating that he saw the child's peril before the driver saw it and tried to prevent the accident is extraordinary and very significant. The pedestrian testified that he waved to the driver to stop, and that the driver applied his brakes, but it was then too late to avert the accident.

In order to justify the withdrawal of the case from the jury, the evidence must admit of no inference of negligence in the operation of the automobile. We find the evidence in this case sufficient to admit of an inference that the proximate cause of the accident was the driver's unlawful speed and lack of care. From this evidence the jury might find that the driver having an unobstructed view of the entire block, could have avoided hitting the child, if he had been driving within the speed limit and had used proper care to watch out for her. *Stafford v. Zake,* 179 Md. 460, 464, 20 A. 2d 144.

It is also plain that the child in this case cannot be held guilty of contributory negligence as a matter of law. In considering the question of contributory negligence, the Court recognizes that a child is required to exercise

only that degree of care which a reasonably careful child of the same age and intelligence would exercise under similar circumstances. The mere fact that a young child, when frightened or bewildered, turns around in the street near one sidewalk and starts to come back to the other sidewalk when called by the screams of a parent is not necessarily evidence of negligence. In this case the child was only four years old at the time of the accident. We have definitely held that a child four years old cannot be guilty of contributory negligence under any circumstances. *Mahan v. State, for Use of Carr,* 172 Md. 373, 385, 191 A. 575; *Bozman v. State, for Use of Cronhardt,* 177 Md. 151, 155, 9 A. 2d 60.

For the reasons stated we are convinced that the cases should not have been withdrawn from the jury. We will therefore reverse the judgments which were entered in favor of defendants and grant plaintiffs a new trial.

*Judgments reversed and cases remanded for a new trial, with costs.*